Eldora HUDSON, Appellant,

v.

CONTINENTAL BUS SYSTEM, INC.,
Appellee.

No. 7051.

Court of Civil Appeals of Texas.

Texarkana.

Sept. 23, 1958.

Rehearing Denied Oct. 28, 1958.

Chaney & Harless, Bowyer, Thomas, Crozier & Harris, Dallas, for appellant.

Callaway, Reed, Kidwell & Brooks, O. D. Montgomery, R. T. Bailey, Dallas, for appellee.

DAVIS, Justice.

This is an appeal from a summary judgment dismissing the suit of Mrs. Eldora Hudson against the Continental Bus System, Inc., hereinafter referred to as Continental, for damages sustained by Mrs. Hudson on an alleged vacation tour from Dallas, Texas, to Acapulco, Mexico and return. The damages sued for occurred in Mexico.

Prior to July 7, 1955, Mrs. Hudson talked to W. S. Craig, an agent and representative of Continental, relative to the tour to Mexico and return. On July 7, 1955, she purchased from Craig a ticket or tickets for the conducted tour and issued to Continental her check for the sum of $199.42, which check was payable to its order only. At that time, Craig issued and delivered to Mrs. Hudson Continental's bus ticket from Dallas, Texas, to Laredo, Texas, and return. The sale and delivery of the tickets by Craig to Mrs. Hudson is shown in an affidavit by Craig filed in the case by Continental in support of its motion for summary judgment. On the face of each section of the ticket, and the stub, there is stamped the following words and abbreviations: "Tour Psgr. Pre-Planned Itinry." At the same time W. S. Craig issued and delivered to Mrs. Hudson a "Travel Service Order," the face of which reads as follows:

| Trailways Tours TRAILWAYS TRAVEL BUREAU CORP. | | TRAVEL SERVICE ORDER |
|---|---|---|
| PURCHASER'S COPY | 1012-14TH STREET, N.W. WASHINGTON 5, D.C. | No. B 24710 July 7, 1955 |
| PLEASE FURNISH the following services: | Mrs. Eldora Hudson | Date Number in Party ONE |
| | ONE — Single MIA 1000, 12 day Mexican Land Cruise. To leave Laredo, Texas at 4:00 P.M. Sunday, July 10. Rate $175.00 | |
| DRAWN ON | | VALUE $175.00 TAX $ 175.00 |
| | Mexico Travel Advisors Madero 16 Mexico City, D.F. ATT: Enrique Burmeister | Arriving 10:05PM 7/10 Leaving 4:00PM 7/10 Staying at Hamilton Hotel Issuing Agent W. S. Craig Address 1500 Jackson Street City Dallas, Texas. Continental Trailways |

On the back of the Travel Service Order, the following provisions are printed:

"Contract:

"In issuing this order, the selling company acts only as agent for the owners or contractors providing the services covered on the face of this order. This order is issued subject to any and all terms and conditions under which the desired services as stipulated on the face of this order are provided by the owners or contractors. Trailways Travel Bureau Corp., and/or it's agent's are not responsible or liable for any delays, or loss or injury to any person or property.

"Trailways Travel Bureau Corporation.

"Passenger Holding This Order:

"This order is good only for the services specified on the date shown. In the event your trip is altered to another date it is your responsibility to advise the company or contractor furnishing this service of your revised date, and *accomodations* or services are subject to availability on the altered date.

"Company Honoring This Order:

"This order should be lifted from the holder in lieu of payment of their account less items of a personal nature, and mailed together with statement to Trailways Travel Bureau Corp. 1012–14th St., N.W.—Washington 5, D.C."

We note here, because it is important to the decision of this case, that there is not anything on the face of the travel service order that in any way refers to or adopts the provisions on the back. Neither is there any signature of anyone to indicate that the contents on the back of the travel service order is to be a part of the contract on the face thereof.

On July 9, 1955, Mrs. Hudson pursuant to the ticket and travel order, was being transported by a man by the name of Carrera along a road in Mexico. Prior to the time they reached Acapulco, the car being driven by the said carrier was involved in an accident by skidding on a wet road and resulted in damages and injuries to Mrs. Hudson. She filed her suit in the District Court of Dallas County, Texas, against the Continental Bus System to which Continental filed its motion for summary judgment, contending that it was not liable for damages as a matter of law for several reasons. One reason was that the limitation contained on the face of the stub of the ticket issued by Continental to Mrs. Hudson from Dallas to Laredo which provision limits liability of the carrier to the end of its own line. Another is that as to any accident occurring and injuries sustained in Mexico, the laws of Mexico govern, and Mrs. Hudson was not entitled to maintain her suit in the State of Texas, because the laws of Mexico are so dissimilar to the laws of the State of Texas in like matters the courts of Texas could not enforce the laws of Mexico. The laws of Mexico were pleaded and proved but it is not necessary to discuss them or their dissimilarity in a decision of this case.

Mrs. Hudson pleaded that Continental sold her a guided tour to Acapulco, Mexico and return and that it impliedly contracted to carry her safely. Further, that the person or persons transporting her in Mexico were the agents, servants and employees of Continental. And in the alternative, for damages for breach of contract, which contract was entered into in Dallas, Texas, and that the law of the place of the contract governed rather than the law of the place of the injury.

Mrs. Hudson challenged Continental's motion for summary judgment and in addition to her pleadings, filed her affidavit which reads as follows:

(Caption, signatures and jurat omitted)

"On support of her answer to Defendant's Motion for Summary Judg-

ment in the above entitled and numbered cause, the undersigned Plaintiff, Eldora Hudson, makes this affidavit and states on oath as follows:

"That on and before July 7, 1955, I talked to a Mr. Craig, who represented to me that he was employed by the Continental Bus System, Dallas, Dallas County, Texas, concerning a conducted tour through Mexico.

"That I had at least two conversations with Mr. Craig over the telephone before July 7, 1955, concerning such tour; that I received literature through the mail concerning such tour; that I talked to Mr. Craig in his office in the Union Bus Depot in Dallas, Texas at least one time about the Mexico trip; that I talked to Mr. Craig again when I purchased my ticket on or about July 7, 1955, at the Union Bus Depot in Dallas, Dallas County, Texas.

"That at all times during my conversations with Mr. Craig he represented to me that the Continental Bus System, Inc., had planned the entire tour through Mexico; that he led me to believe that a Continental Bus would transport me and other people on the tour from the border at Laredo, Texas, to Mexico City, Acapulco and return; that Mr. Craig represented to me that Continental Bus System, Inc., had made all arrangements for the tour through Mexico, including the securing of reservations in hotels, side trips and so forth.

"That during my conversations with Mr. Craig he continually used such expressions as 'our people in Mexico', 'our bus', and 'We have made reservations', etc.

"That at no time during my conversations with Mr. Craig did he or any other agent, servant or employee of Continental Bus System, Inc. call my attention to a contract of any type on any tickets, travel service orders, or any papers given to me by Mr. Craig or by any agent, servant or employee of Continental Bus System, Inc.

"That at no time before leaving Dallas, Texas, on such tour on or about July 9, 1955, did Mr. Craig or any other agent, servant or employee of Continental Bus System, Inc. mention to me anything concerning a contract for any purpose.

"That I drew a check for One Hundred Ninety-nine and 42/100 ($199.42) Dollars payable to Continental Bus Lines, which check I gave to Mr. Craig in payment for the tour; that Mr. Craig concealed from me that there was a contract or contracts on back of the travel orders and bus tickets given to me when he was under a duty to disclose these contracts to me; that he led me to believe that Continental Bus System, Inc. was fully responsible for the entire trip.

"Witness my hand this the *2nd* day of February, 1956."

The court sustained the motion for summary judgment and dismissed the case. Mrs. Hudson has perfected her appeal and brings forward five points of error.

■ By Points 1, 2 and 3, she contends that: (1) The pleadings raised a material and genuine fact issue as to whether or not Continental contracted with her to transport her to Acapulco, Mexico and return, which issue of fact could not be resolved by the affidavit and exhibits before the court; (2) the pleadings raised a genuine and material issue of fact as to whether or not Continental contracted with her as agent for an undisclosed principal which could not be resolved by the affidavits and exhibits before the court; (3) the pleadings and affidavit raised a material and genuine issue of fact as to whether or not Continental, or its agents, even if they did not make a contract to carry her to Acapulco, Mexico and return, did by their acts and language lead her to believe that her

transportation on the entire trip was being provided by Continental and such issue of fact was pleaded by her as estoppel and could not be resolved by the affidavits and exhibits before the court.

From the affidavits and exhibits hereinabove set out, it can readily be seen that these points are well taken. Mrs. Hudson alleged express contract, undisclosed principal, estoppel, and joint venture; and in the alternative, breach of contract. The case of Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929, is sufficient authority for our holding on these points. But we do want to point out and stress here again the statements stamped on the face of Continental's ticket: "Tour Psgr. Pre-Planned Itinry." This is strong evidence of the fact alleged that Continental planned the trip all the way to Acapulco and return. The provisions contained on the back of the travel service order are not incorporated in the contract on the bus ticket, neither are they incorporated or referred to in the contract on the face of the travel service order, and are not binding on Mrs. Hudson as a part of the contract. The law does not recognize the validity of such printed matters on the back of a contract as pointed out in 8 Tex.Jur. p. 667, Sec. 484, which reads as follows:

"It is settled law that a carrier may issue tickets and passes containing binding conditions and limitations, especially where reduced compensation is paid for transportation. However, conditions and limitations are binding upon a traveler only in case he assented thereto. While unobjectionable provisions contained in the body of the writing are ordinarily binding, even though it was not signed by the traveler, *he is not bound by words printed upon the back of the ticket, which were not incorporated in the contract and to which his attention was not directed.*" (Emphasis added.)

See also authorities therein cited.

The issues raised by the pleadings, exhibits and the facts stated by Mrs. Hudson's affidavit, which are not challenged by Continental, clearly show that the name of the connecting carrier was not revealed to Mrs. Hudson from the end of Continental's line (if its line actually ended at Laredo). The travel service order was issued by "Trailways Travel Bureau Cor." by W. S. Craig, the same person who issued Continental's ticket. It was drawn upon Mexico Travel Advisors and she was being carried by a man by the name of Carrera in a car at the time of her injuries. These matters present facts issues, also, which Mrs. Hudson is entitled to have a jury pass upon. If Continental failed to reveal the name of the connecting carrier, then it is liable for the damages sustained by Mrs. Hudson. Union Bus Lines v. Young, Tex.Civ.App., 194 S.W.2d 799, n. w. h. Points 1, 2 and 3 are sustained.

By Point 4, Mrs. Hudson complains of the action of the trial court in granting the summary judgment because the pleadings, affidavits and exhibits before the court raised an issue of fact as to joint venture as alleged in her petition. From what has been stated as to the pleadings and as revealed by the affidavits and exhibits, we find that an issue of fact of joint venture was raised. In Craig's affidavit filed herein by Continental in support of its motion for summary judgment, Craig swore (and Continental is bound by it):

"* * * That I am employed by Trailways Travel Bureau Corporation as the Manager of Tours at Dallas, Texas, and on and before July 7, 1955, was so employed; that in such capacity I was authorized to sell passenger tickets for transportation over the lines of Continental Bus System, Inc., and its connecting lines and also to sell travel service orders for transportation in Mexico and elsewhere as hereinafter more fully set out. * * *"

The least that could be said of these sworn statements of facts by Continental's witness is that they raise a fact issue of joint venture. They come very close, if they do not admit, joint venture. If it was a joint venture, each member of the joint venture of transportation of a passenger for hire is liable for the act of the other performed within the scope of the enterprise. Martin v. Weaver, Tex. Civ.App., 161 S.W.2d 812, wr. ref. w. o. m. Point 4 is sustained.

By Point 5, Mrs. Hudson complains of the action of the court in granting summary judgment because her suit, being alternatively in the nature of a breach of contract is governed by the law of the State of Texas where the contract was made. There is not anything in the contract, or contracts, to designate the law applicable thereto at the time of the making. Therefore, the parties are bound by the contract under the laws of the State of Texas. In support of this contention we cite 17 C.J.S. Contracts § 330, p. 782, which reads as follows:

"Unless a contract otherwise provides, the law applicable thereto at the time of its making, including the law of the place where it is entered into, and the law of the place where it is to be performed, as the case may be, is as much a part of the contract as though it were expressed or referred to therein, for it is presumed that the parties had such law in contemplation when the contract was made. So, when a statute prescribes a duty and a contract is made involving performance of that duty, such statute becomes a part of the contract; or, where the law authorizes the regulation of service rendered the public, such law becomes a part of and controls contracts providing for the public service. Likewise, where a contract is made in contemplation of state law, or of a particular statute, such law forms a part of the contract, whether or not incorporated therein, and the contract will be construed in the light thereof. Similarly, the parties to a contract made with reference to the laws of a jurisdiction other than that of the place of contracting are deemed to have incorporated into the contract the law of such jurisdiction. *However, it has been held that a contract cannot be construed with reference to a foreign law, unless the intent of the parties to be governed by such law is evidence from the instrument itself without the aid of extrinsic evidence.*" (Emphasis added.)

See also authorities cited therein. There is nothing in this record to indicate any intention on the part of the parties that the law of the foreign country of Mexico would apply. Point 5 is sustained.

For the errors hereinabove pointed out, the judgment of the trial court is reversed and the cause remanded with instructions that the case be reinstated upon the docket for a trial upon its merits.