Joseph Lief, J.
Following an earlier practice, in the summer of 1972 the Paterson and Majewski families began to plan a joint vacation over the Christmas holiday. In doing so they relied upon Astral Travel Service (Astral) an agency with which they had previously dealt. They looked forward to spending a few days with their five children in the Canary Islands, of course not anticipating the discomfort, inconvenience and disappointment they would suffer.
In this action plaintiff Odysseys Unlimited, Inc. (Odysseys) sues to recover on Astral’s two 'cheeks in the amounts of $676.80 and $875.90 .on which Astral had stopped payment. Astral in one counterclaim alleges that its clients, the inter-pleaded defendants Majewski and Paterson, demanded a refund because of the breach of the agreement for the trip. In a second counterclaim Astral seeks to recover from Odysseys the sum of $1,345 (unrelated to the Majewski-Paterson claim) which represents an advance by Astral for a group tour to the Canary 'Islands via Iberia Airlines which would have included accommodations at the ¡San Felipe* Hotel. Astral, confronted with claims against it by Odysseys, Majewski and Paterson, interpleaded Majewski and Paterson. Majewski and Paterson counterclaimed alleging that both Odysseys and Astral breached agreements with them and demand the return to them of $1,375.90 and $1,076.80, the total cost of their trips. In a second counterclaim they seek $10,000 as damages for having 1 ‘ suffered great inconvenience, humiliation, pain and were compelled to spend their vacation in inferior accommodations ”. Astral’s reply and cross claim allege that if the interpleaded defendants suffered any damages it was plaintiff Odysseys’ fault and asks that Odysseys ,be compelled to indemnify it against any judgment which may be recovered by the interpleaded defendants.
Astral (a retail travel agent) suggested to 'Dr. Paterson and Mr. Majewski a package tour prepared by Odysseys (a wholesale agency). The tour, . entitled “Xmas Jet Set Sun Fun/Canary Isle ”, was scheduled to depart December 26,1972 *504 by jet for Tenerife, Canary Isles, Puerto de la Cruz, staying at the “ delux iSemiramis Hotel ” and returning on January 1, 1973 by jet. Majewski and Paterson accepted this trip costing $1,375.90 and $1,076.80 respectively and made their down payments to Astral. Astral withheld its commission and forwarded the balance along with the reservations to Odysseys who in turn confirmed the reservations to Astral’s Mr. Howard Pollack. Exhibit B is a handsome colored brochure illustrating the Hotel iSemiramis, its location, accominodations, etc., designed to excite the eye of any one contemplating a trip abroad. An information sheet furnished details of the trip and referred to the accommodations at the “ Five-Star Hotel Semiramis ”.
On December 26, 1972 the group flew off to the Canary Islands. They arrived at the airport in Tenerife at about dawn and waited about two hours (one-half hour was spent in a bus) before they were taken to the Hotel Semiramis. At this point the passengers had been en route some 30 hours. While attire airport they saw Mr. Newton, president of Odysseys, who accompanied the group tour. (The inference may reasonably be drawn that he went along because he anticipated the difficulties which were .shortly to be encountered.) Two hundred fifty weary but expectant guests arrived at the ¡Semiramis and were presented with a letter from the hotel advising them that there were no .accommodations available to their group. Dr. Paterson confronted Mr. • Newton with this letter and the latter acknowledged that there was no space available and that he was looking for others. For about four hours 250 people (including bag and baggage except for what was strayed) were in the lobby of the iSemiramis until they were divided into groups and directed to other hostelries. The Paterson and Majewski families were brought to the Porto Playa Hotel which was not fully ready for occupancy ¡because it was under construction and without the recreational facilities and conveniences available at the Hotel ¡Semiramis. Portions of the Porto Playa Hotel were enclosed in ¡scaffolding. Paterson and Majewski testified that work was done in their rooms, water supply .uncertain, ¡electric connections incomplete, etc., etc. throughout their stay.
The court is convinced that prior to the group’s departure Mr. Newton was aware that there were no reservations at the Semiramis Hotel for his charges. He testified that on either December 18 or 19, 1972 he knew of the overbooking at the hotel. Paterson and Majewski stated that Newton told them at the hotel that the reservations were in jeopardy and would *505 not "be honored but he did not share his knowledge. In his letter of January 12, 1973 addressed to tour members, Mr. Newton confirms the fact that he had been aware of some “ problem with overbooking by that hotel ” (Semiramis Hotel) and states that his agent (Viajes Aliados, S. A.) ‘“had the foresight to have armug'-J for alternate accommodations ”. He is at the least disingenuous in asserting that he had assurance from the Spanish National Tourist Office that the Semiramis Hotel would have accommodations for ¡the group because that office informed him that the Hotel Semiramis was “instructed to receive all the members of your group for whom reservations., were made ”. However, the reservations for the tour were not confirmed and, therefore, the hotel was not obligated to accommodate the members of the group.
Odysseys has not demonstrated that it performed the agreement as required and “ a party who seeks to recover damages from the other party to a contract for its breach must show that he himself is free from fault in respect to performance ” (10 N. Y. iJur., ‘Contracts, § 385). One of the elements in a breach of contract action is the “performance by plaintiff” (2 N Y PJI 868) and because Odysseys did not produce reservations for Paterson and Majewski at the Semiramis Hotel, recovery on the two checks is denied and the complaint is dismissed.
Majewski and Paterson sue in contract and negligence seeking recovery of their payments for their trip and for their ordeal. Their claims spring from a breach of contract by Astral for its failure to furnish the hotel accommodations agreed upon. Majewski and Paterson are entitled to recover from Astral for the breach of contract. Damages in the usual breach of contract action should indemnify a party “for the gains prevented and losses sustained by the breach; to leave him in no worse, but put him in no better, position than he would have been had the breach not occurred ” (2 N Y PJI 907; see also. 13 N. Y. Jur., Damages, § 38; 25 C. J. S., Damages, § 74). However, when a passenger sues a carrier for a breach of their agreement concerning accommodations the “ inconveniences and discomforts which a passenger suffers * * * are to be considered in .the assessment of the damages ” (N. Y. Damages Law, <§ 624). “ Damages arising from a breach of the contract to carry, which results in inconvenience and indignity to the passenger while in transit, are not limited to the price of passage ” (Lignante v. Panama R. R. Co., 147 App. Div. 97, 99-100; see, also, Aplington v. Pullman Co., 110 App. Div. 250) and “ the discomfort and inconvenience to which ” a passenger was *506 put by the breach-of the carrier’s contract “was within the contemplation of the parties and a proper element of damage ” (Campbell v. Pullman Co., 182 App. Div. 931; see, also, Owens v. Italia Societa Per Azione, 70 Misc 2d 719, 723 [Civ. Ct. of City of N. Y.], affd. 75 Misc 2d 104 [Appellate Term, 1st Dept.]). Although these cases concerned accommodations with common carriers the principle should be applied to the relationship between travel agent and clients. The agent should be “held responsible to: (a) verify or confirm the reservations and (b) use reasonable diligence in ascertaining the responsibility of /any intervening ‘ wholesaler ’ or tour organizer ” (Bucholtz v. Sirotkin Travel, 74 Misc 2d 180, 182). because the contract was violated and the accommodations contracted for not furnished, a more realistic view for awarding damages to Majewski and Paterson would include not only the difference in the cost of the accommodations but also compensation for their inconvenience, discomfort, humiliation and annoyance.
Odysseys attempted to mitigate the damages to Majewski and Paterson by offering proof as to the difference in value between what they received (at a four-star hotel) and what was agreed upon (a five-star menage). However, this evidence is without force because the hotel at which they stayed was under construction, its recreational facilities were nonexistent and its location was not nearly as desirable as that of the Semiramis. The proverbial expression about a picture being worth a thousand words has particular application to Exhibits B, D — 1 and 2, and I — 1, 2, 3 and 4 to reveal what Majewski and Paterson expected and what they found. Paterson and Majewski are entitled to the return of the total sum each paid for the trip as damages to them and their family for the inconvenience and discomfort they endured.
The tour included a period from December 26 to January 1. The party landed on its easterly journey on the 27th of December. When the Majewskis and Patersons became aware of their predicament they made heroic efforts to return immediately but heavy bookings in the holiday season made that impossible. They were constrained to remain and to suffer the results of Mr. Newton’s callousness. Had their dealings been directly with the plaintiff we would have considered the imposition of additional damages. . However, their negotiations and dealings were with Astral who might have exerted greater efforts to see that arrangements were properly made.
In all of the circumstances we think that it would be appropriate to make the Patersons and Majewskis whole in pocket. *507 Accordingly, they are awarded judgment against Astral in the amounts of $1,076.80 to Paterson and $1,375.90 to Majewski.
On Astral’s cross claim against Odysseys for breach of contract, concerning the Majewski and Paterson claims if successful, Astral is entitled to a judgment against Odysseys in the amount of $2,452.70 less $308.30 which Astral retained as its commission, because Odysseys failed to perform its contract and it was Odysseys which was responsible for the fate which befell Majewski and Paterson.
In an unrelated matter Astral counterclaimed against Odysseys seeking return of a $1,345 deposit for a group tour also to the ¡Canary Islands but via Iberia Airlines and with a stay at the San Felipe Hotel. Astral .gave this sum to Odysseys as a deposit for a group tour of 50 persons since it was allegedly required by the ’San Felipe Hotel to “firm up your confirmation ”. Odysseys indicated that this deposit was nonrefundable. Having received cancellations by members of the group that was to take this trip, Astral was unsuccessful in attempts to substitute their vacationers and requested a refund of the deposit paid. Odysseys ’ proof failed to show that it suffered any loss by the cancellation or that it paid any part of the deposit to the hotel. We also found that Odysseys asked for the deposit because it was required by the hotel but no part of it was ever paid , over to the hotel. Accordingly, Astral is entitled to a return of their deposit and may enter judgment against Odysseys for said amount.