FRANCINE M. WEINER, Appellant, v BRITISH OVERSEAS AIRWAYS CORPORATION, Respondent, et al., Defendants. (And a Third-Party Caption.)

Second Department, January 9, 1978

## APPEARANCES OF COUNSEL

*Morris Honig* for appellant.

*Condon & Forsyth (Stephen J. Fearon* and *Joseph J. Kearney* of counsel), for respondent.

## OPINION OF THE COURT

SHAPIRO, J.

Defendant British Overseas Airways Corporation (BOAC) was granted summary judgment dismissing plaintiff's complaint as against it and plaintiff appeals. We affirm.

### THE PLEADINGS AND THE FACTS

Plaintiff sues (1) in negligence to recover damages for personal injuries suffered by her when the rented car which she was driving under a fly-drive tour of Great Britain, purchased by her on the basis of a brochure issued by BOAC, was in an accident because its steering wheel locked, and (2) for breach of warranty of suitability of the car, which was rented by the

defendant Hertz Rent-A-Car Daimler Hire, Ltd., to the plaintiff as a feature of BOAC's fly-drive tour.

The complaint alleges that prior to May 14, 1970 the defendants offered a packaged vacation in Great Britain which included round-trip air transportation via BOAC between New York and London, transportation between the London airport and London, guesthouse accommodations in London for six nights and self-drive sightseeing via Ford Escort (or similar) for one week with unlimited mileage. The complaint further alleges that plaintiff purchased the fly-drive combination tour and paid the agreed price; that on June 8, 1970 she received a Ford Escort motor vehicle for self-drive sightseeing during the second week of her tour of England; and that on June 10, while she was driving on a public road in England, the vehicle was in an accident caused by a defect in the vehicle, resulting in her suffering serious injuries. A second cause of action set forth in the complaint alleges that plaintiff operated the vehicle on the basis of warranties, representations and undertakings in the brochure that the vehicle provided to her as a traveler on the "Combination Holidays in Britain, 1970" was suitable and fit for the use to which she was to put it and not dangerous to her, and that in using it she relied on defendants' warranties, representations and skills. The second cause of action also alleges that the warranties were untrue, that the vehicle was defective in its materials, repairs, servicing, inspection and maintenance and that these defects caused her the injuries for which she sought damages.

BOAC's answer, in addition to denials and the usual defenses of failure to state a claim against it, contributory negligence and assumption of risk, also alleged as a defense that the tour brochure upon which plaintiff relied contained language under the heading "Responsibility" which gave notice that the defendant Five-Dollar-A-Day Tours, Inc., was acting "as agents for the passenger" in issuing tickets, vouchers and coupons and making arrangements for hotel or guesthouse accommodations. The brochure also provided that such agency was "upon the express condition that they shall not be liable for any injury, damage, loss, accident, delay or irregularity which may be occasioned either by reason of defect in any vehicle or through the acts or default of the company or person engaged in conveying the passenger, furnishing rental cars to him, or in carrying out the arrangements of the tour or otherwise in connection therewith". It was also alleged that

the last paragraph under the same heading in the brochure declared:

"BOAC and other IATA carriers, steamship lines and other transportation companies whose services are featured in these tours are not to be held responsible for any act, omission or event during the time passengers are not on board their conveyance. The passage contract in use by these companies when issued, shall constitute the sole contract between the companies and the purchaser of these tours and/or passage."

Plaintiff submitted to an examination before trial by defendant BOAC, the remaining defendants third-party plaintiffs and the third-party defendant, Ford Motor Company, on December 10, 1975. She testified that she left for London on June 1, 1970 on BOAC and, after spending the first week in London, went to Cardiff by train on June 7 and there stayed overnight with some friends. On June 8 she picked up a car at the Hertz car rental agency in Cardiff and, on the morning of June 9 drove in it to Stratford-on-Avon, where she went to the theatre and stayed overnight at a guesthouse. The next day she left and continued to drive along English roads until about 6:00 or 6:30 P.M. when, as she was coming out of an S-curve, her steering wheel locked and her car went off the road; she was knocked unconscious and injured when it struck something. She woke up in an English hospital and was there until June 21, when she left the hospital to return to the United States.

In plaintiff's examination before trial she also testified that not only had she made all her arrangements for the trip with the travel agency and received her tickets and vouchers from it and paid the agency for them, but that she had read the entire brochure carefully, including the section under the heading "Responsibility", when she first received the brochure from the defendant travel agency and that she understood everything that was written in it.

### THE DECISION OF SPECIAL TERM

By notice of motion returnable May 21, 1976, BOAC moved for summary judgment. By order dated June 29, 1976, the motion was granted in all respects on the default of the plaintiff and the complaint was dismissed as against BOAC and the action against it severed. By notice of motion returnable on July 20, 1976, the plaintiff moved to open her default and to vacate the order granting BOAC summary judgment and for denial of the motion for summary judgment. In his

affidavit opposing this motion, BOAC's counsel attacked the adequacy of plaintiff's affidavit submitted in support of her motion, contending that it showed that although she might have a cause of action against Ford, the manufacturer of the automobile, or Hertz, which rented it to her, she could have no cause of action against BOAC "on any theory of liability recognized in law." He also contended that BOAC had fully carried out its contract of transportation with plaintiff by carrying her safely from New York to London and that the accident in which she was injured took place nine days after she disembarked from the BOAC plane in London and occurred in an automobile with which BOAC had had "nothing to do".

By order dated December 9, 1976, Special Term granted plaintiff's motion to vacate her default and, upon reconsideration, granted BOAC's motion for summary judgment on the merits, dismissed the complaint as against it and severed the action accordingly. In its memorandum decision, Special Term, after noting that plaintiff's action against BOAC was based on a claim that it was negligent and had breached its warranty in furnishing her a defective unsafe car in violation of its representation that she would be provided with a suitable and safe car, stated the critical factor in the case to be "the relationship between BOAC and the defendant, Hertz". Upon examining that relationship, it concluded that no relationship between BOAC and Hertz was established which created liability in BOAC for Hertz' possible negligence "[e]ven if BOAC is viewed as one of the promoters of the tour, by virtue of its advertising brochure". It reached that conclusion on the basis of BOAC's specific disclaimer in the brochure that it was not insuring the safety of the plaintiff, except on board its plane. The brochure contains, among its "General Conditions", a reference to "Air Transportation", which declares, in relevant part:

"Economy Class Jet, by British Overseas Airways Corporation. Individual air fares based on 14/21-day Group Tour Basing Fares, subject to participation of minimum 15 persons on entire flight itinerary * * * If these numbers of passengers have not been gathered, the departure or tour may be cancelled or alternate dates offered".

Special Term, in its memorandum decision, took note of the fact that the front page of the brochure announces "*Hertz rents Fords and other fine cars*" (emphasis by Special Term)

and went on to conclude that this "advertising puff for Hertz does not constitute a contractual warranty by BOAC that the Hertz car would be free from defects."*

The issue raised by this appeal is whether BOAC, a foreign airline which issued a travel brochure entitled "Combination Holidays in Britain, 1970", offering as one option a two-week fly-drive tour of Great Britain, including the use for one week thereof of a Hertz rental car, is liable either in negligence or for breach of warranty for injuries suffered by a purchaser of such a tour whose injuries were the claimed result of a one-car accident caused by a defective steering gear in the rented car which she was driving.

### THE APPLICABLE LAW

■ Plaintiff contends that the appearance on the face of BOAC's brochure "Hertz Rents Fords and Other Fine Cars" constitutes a warranty by BOAC that the rental cars provided by Hertz are safe and that BOAC's failure to take reasonable precautions to ascertain that the cars provided by Hertz to purchasers of the tour drive plan were fit for the uses intended established fraudulent inducement. We find no merit in that claim. Tour arrangers have no such obligation, for even absent the specific disavowal of BOAC's liability for acts or omissions occurring during the time passengers are not on board its conveyance, there is no language in the brochure which indicates that BOAC assumed such a responsibility on behalf of those purchasing the fly-drive tours advertised in the brochure. Rather, the references to Hertz, an internationally known and responsible car rental agency, on the face of the brochure, and the mention of the tour as a "self-drive sightseeing" one "via Ford Escort (or similar) for one week, includ-

---

* Our examination of the brochure discloses another item, under the heading "Special Notes", which tends to negate any claim that Hertz is anything other than an independent contractor with BOAC. It states: "1. On tours involving the use of cars, passengers will be asked to leave a deposit with the Hertz representative to cover the payment of local taxes, possible damage to the car, insurance deductible, and other contingent expenses. To the extent that such charges are not incurred, the deposit will be returned upon the conclusion of the rental. Not included in the price of the tour are collision damage waiver, gasoline and the like. Liability and collision insurance ($100 deductible) are included in the tour price. Full collision protection is available on request at a price of $7.50 per week; if full protection is purchased, the deposit mentioned above will be considerably reduced."

ing UNLIMITED mileage privileges" all tend to negate any such inference.

Plaintiff also seeks to reverse the summary judgment awarded against her upon a contention that if she is permitted, in further pretrial proceedings, to obtain the text of the agreements between BOAC and Hertz, she may be able to establish that BOAC's failure to insure the provision to her by Hertz of a safe car involved either negligence or a breach of warranty on its part. But if BOAC owes its tour purchasers a duty to insure them against injury when they rent a car from a car-rental agency, that duty would have to flow from BOAC's agreement with the tour purchaser (here, the plaintiff) and not its arrangement with the provider of the rented car. Clearly the rented car is neither the product of BOAC nor is it at any time under BOAC's dominion or control. To recover damages for the injuries suffered in the accident in which the rental car she was driving was involved, the plaintiff would be required to establish that BOAC engaged in conduct which "should be recognized as involving unreasonable danger to others" (Prosser, Law of Torts [4th ed], p 145). Clearly, to classify BOAC's failure to follow the plaintiff to Cardiff and to inspect the rental car she there obtained from Hertz on the basis of the voucher for such rental she had purchased from BOAC through the defendant travel agency as conduct involving unreasonable danger to her, would entail a feat of legal legerdemain in no way supported by logic, reason, business custom or precedent.

■ Our examination of the cases and texts discloses no basis for concluding that BOAC, in arranging the tours set forth in its brochure in order to expand its trans-Atlantic business, and in basing its charge for each tour on the cost of air transportation, the cost of car rental and, as it states in its brochure, "a charge for the making of reservations and for the cost of planning these trips", assumed a duty to inspect the automobiles given its passengers or that it thereby agreed to insure their safety against negligence or that its representations constituted an implied warranty of usability of such automobiles.

■ Since BOAC, as the tour arranger, had no duty to insure against negligence of the independent contractors with whom it arranged to provide the rental car, hotel or bus transportation services it included in its tours and, in fact, specifically disavowed any such duty in its brochure, no claim of negli-

gence can successfully be directed against it if the tour purchaser is injured by the contractor's negligence while availing himself of the services provided by the contractor. In *Dorkin v American Express Co.* (43 AD2d 877), plaintiffs, who had contracted with the defendant for a tour of Europe, were injured while they were touring Holland when the foreign bus engaged by the defendant to provide the transportation needed by them braked abruptly, throwing them to the floor and injuring them. Plaintiffs' suit was in negligence for defendant's failure to exercise reasonable care in providing safe equipment and careful personnel to discharge its contractual obligation to supply plaintiffs with a safe European vacation. In affirming the Special Term's grant of summary judgment to defendant, the Appellate Division said: "The crucial issue is the relationship between defendant and the foreign bus company on whose bus plaintiff was injured. While the allegations of the complaint, if proved, are sufficient to hold defendant liable, an examination of the papers submitted on the motion reveals that the tour bus was owned and operated by an independent contractor. Such relationship, therefore, precludes any liability on the part of defendant, either on a theory of negligence or breach of contract. Defendant agreed to supply plaintiffs with a planned European tour with meals, lodging and transportation. It did not, however, insure the safety of plaintiff. The disclaimer in the tour contract negates any intent of defendant to assume a contractual oligation for such safety."

In *Feig v American Airlines* (167 F Supp 843) the plaintiff had purchased a round-trip ticket from the defendant for transportation between Washington, D.C. and Mexico City and a "Tour Order" to Embassy Tours in Mexico City to be presented to its representative at the Mexico City Airport, entitling plaintiff to a tour in Mexico City. The "Tour Order" provided, in relevant part (p 844): " 'Tour services * * * are furnished by independent contractors who are not agents or servants of the Company * * * The acceptance of this order by the passenger * * * shall be deemed to be consent to and acceptance by such person of the further condition that neither the company nor any of its subsidiary * * * companies shall be liable or responsible in any way whatsoever for any * * * injury * * * of any person arising out of or in connection with such tour services.' " Two or three days after plaintiff's arrival in Mexico City she was injured while on a

sightseeing tour in an auto operated by an agent of Embassy Tours when the automobile collided with a truck. In granting defendant's motion for summary judgment, the court said (pp 844-845):

"This was the contract between the parties and would seem to relieve defendant of any liability for injuries sustained by plaintiff after her safe arrival in Mexico City. It is not a case, as plaintiff contends, where a carrier attempts to limit its common law liability to passengers by contract of carriage * * * Instead, this is a disclaimer or disavowal of the *existence* of any such relationship between plaintiff and defendant so far as tour services after arrival at Mexico City are concerned * * *

"The fact that plaintiff paid defendant the price of the tour service at the same time she purchased her ticket for airline transportation does not make defendant responsible for the acts of those for whom it was only acting as agent in arranging the tour and over whom it exercised no control, and creates no liability on the part of defendant, especially when considered in the light of the express contract set forth in the tour order."

In both of the above cases, the injury giving rise to the action was not the result of a defect in the automobile provided by the independent contractor, but rather was the result of alleged negligence by the driver of the motor vehicle provided. *Hence the issue was whether the defendant was in any way responsible for the selection of a driver who was competent as such.* Certainly, if the courts in those cases found no basis for liability sufficient to prevent the complaints from being subject to dismissal on a motion for summary judgment, it would seem to follow, a fortiori, that the complaint here, which is predicated on an alleged duty by the defendant airline to check a rental car provided by a reputable car-rental agency for construction or maintenance defects, does not, as a matter of law, set forth a cause of action.

We are not unaware that on at least two occasions, Texas Courts of Civil Appeals have denied motions for summary judgment by travel-agent defendants directed against complaints in personal injury actions brought by Texas clients who purchased tours in Mexico from them for injuries the clients had suffered as a result of the negligence of chauffeurs operating automobiles provided under the tour. In each case the denial of the motion for summary judgment was based on

a holding that the complaint had raised issues which made out a prima facie case of negligence sufficient to survive summary judgment. In both *Casey v Sanborn's Inc. of Texas* (478 SW2d 234 [Tex], Ann., 53 ALR3d 1310) and *Hudson v Continental Bus System* (317 SW2d 584 [Tex]), the courts involved refused to dismiss the complaint. In each case the court based its ruling on the fact that the defendant had led the plaintiff to believe that it was specifically assuming responsibility itself to provide the transportation in question. In *Hudson* the court based its finding on the fact that the tour seller had failed to disclose the identity of the connecting carrier and that fact issues had been raised as to whether the defendant had contracted to, itself, transport the tourist from Dallas to Acapulco. In *Casey* the court found that the travel agency arranging the tour had in its brochures a specially prepared itinerary and had represented that the tour was to be conducted by the agency's Mexican representatives, whereas the responsibility was, in fact, assumed by a Mexican travel agency bearing a different name. Here there were no such representations and there was a specific disavowal of responsibility for travel other than in BOAC's carriers.

Nor does the cause of action based on warranty give rise to a stronger case. As Professor Prosser noted in 1960 (Prosser, The Assault Upon the Citadel [Strict Liability to the Consumer], 69 Yale LJ 1099, 1126), the concept of strict product liability based on an action for breach of warranty stemmed from efforts to impose strict liability on purveyors of food and drink and led to the development of the legal theory that there is "an implied 'warranty,' either running with the goods to the consumer or made directly to him". Elsewhere in the same article, Professor Prosser said (p 1126): "The adoption of this particular device was facilitated by the peculiar and uncertain nature and character of warranty, a freak hybrid born of the illicit intercourse of tort and contract. 'A more notable example of legal miscegenation could hardly be cited than that which produced the modern action for breach of warranty. Originally sounding in tort, yet arising out of the warrantor's consent to be bound, it later ceased necessarily to be consensual, and at the same time came to lie mainly in contract.' " (Footnotes omitted.) Despite those aspersions on the legitimacy of the origin of the doctrine of implied warranty, Professor Prosser in his text, Law of Torts ([4th ed], 1971, p 650) declares that "shortly before 1960 * * * decisions

\* \* \* gave it a sudden and almost explosive impetus" and "[i]t met with the approval of the great majority of the legal writers who discussed it." (Footnote omitted.) However, he noted in the article in the Yale Law Journal (pp 1131-1132): "Any liability founded upon a warranty is traditionally subject to disclaimer by the seller. This means that he is free to insert in his contract of sale an effective agreement that he does not warrant at all, or that he warrants only against certain consequences or defects, or that his liability shall be limited to particular remedies" (footnotes omitted). Professor Prosser went on to say (p 1133): "Commercially a disclaimer may not be at all an unreasonable thing, particularly where the seller does not know the quality of what he is selling and the buyer is willing to take his chances."

In the instant case, as we have seen, there was a disclaimer of liability by BOAC "for any act, omission or event during the time passengers are not on board their conveyance." Plaintiff testified she had read and understood that disclaimer. Further, even if BOAC, as plaintiff contends, was, in fact, the seller of the entire tour, it could have no knowledge of the quality of the rental car Hertz was to provide to her, since it was not aware of which particular car she would be assigned. And, in any case, Hertz was known to be a reputable and responsible car rental agency which could normally be relied upon to provide its customers, including those provided by BOAC, with safe and usable rental cars. In the face of BOAC's specific disclaimer, known to plaintiff when she purchased the tour, there is no basis for her claim of breach of warranty. It seems clear that in the face of BOAC's specific disclaimer, the bald statement on the face of its brochure that "Hertz Rents Fords and Other Fine Cars" cannot be read, as plaintiff contends, as evidence of "false advertising and misrepresentation"; nor can it cast a responsibility on BOAC which it could not possibly have known of and had no reason to suspect, the existence of a defect in the rental car supplied plaintiff by Hertz.

SUOZZI, J. P., RABIN and O'CONNOR, JJ., concur.

Order of the Supreme Court, Kings County, dated December 9, 1976, affirmed insofar as appealed from, with $50 costs and disbursements.