*165 OPINION OF THE COURT
Jack M. Battaglia, J.
Susan Shlivko is seeking a refund of the price of a vacation trip to London that was arranged by Good Luck Travel, Inc. for Ms. Shlivko and her husband. Ms. Shlivko paid $2,790 for the trip, departing on Saturday, August 24, 2002 and returning on Saturday, August 31. Of the total, $1,390 represented airfare on British Airways that was paid by credit card; the balance of $1,400 represented hotel accommodations at Lancaster Hall and various ground excursions, and was paid by check to the defendant. In turn, defendant paid $1,206 by check to Danikon Tours, the “wholesaler” for the land package, retaining $194 as its commission.
Ms. Shlivko seeks the refund because she was dissatisfied with several aspects of the trip, particularly with the quality of the accommodations at Lancaster Hall. Some of Ms. Shlivko’s complaints are insubstantial at best: the wash basin was equipped with separate “hot” and “cold” faucets, rather than a single faucet to allow the water to be mixed; the package price included an additional night at the hotel beyond the day that Ms. Shlivko wanted to return; and one of the four ground excursions, a visit to the British Museum, was scheduled at a time after Ms. Shlivko wanted to return. One of the complaints, a 10-minute walk to the excursion bus, would be more substantial if either Ms. Shlivko or her husband were in any way affected by a disability, but there was no testimony that either was.
A package tour, like a price-fixed meal, might include items that are not desirable to the purchaser, but the package as a whole is desirable because the price may be lower than the prices of the items purchased separately, or because the package includes a feature that cannot be purchased separately, or because the purchaser values the convenience provided by the package. When an item in the package is not utilized, it is not common that an adjustment is made in the price. Here, Ms. Shlivko did not contend that she and her husband wanted to stay an extra night; that they toured the British Museum at their own cost; or that another package was available that would have cost less or better suited their travel plans, but was not presented to them. There is no evidence of such an alternative, nor a contention that defendant’s representative misrepresented the features of the package that was purchased. (See Pellegrini v Landmark Travel Group, 165 Misc 2d 589, *166 594-595 [Yonkers City Ct 1995].) In short, there is no evidence of any breach of duty with respect to the components of the package, or, if there was, that Ms. Shlivko suffered damages as a result.
Other complaints relate to the quality of the services and other conditions at the hotel — specifically, the towels and bed linens were changed only twice during the week, rather than everyday, and the room was dirty and was visited by roaches and a mouse. There is some dispute between the parties as to what steps were taken, and might additionally have been taken, to address Ms. Shlivko’s dissatisfaction, but the court will accept Ms. Shlivko’s contention that it was not possible to move to another hotel. There is no dispute that Lancaster Hall is a three-star hotel; that a three-star hotel provides services and conditions that would generally be considered less desirable than a four-star or five-star hotel; that Ms. Shlivko knew she was booking a three-star hotel and that she could have booked a hotel with a higher rating; and that, from previous trips, Ms. Shlivko knew that the difference in rating would represent a difference in services and conditions.
The precise nature and characteristics of the relationship between travel agents and their customers have somewhat confounded the courts. (See Spiro v Pence, 149 Misc 2d 613, 614-615 [Albany City Ct 1991] [reviewing “inconsistent results”].) “What is the status of a travel agent? If an agent, of whom? The consumer or the wholesaler? Or is the travel ‘agent’ actually a principal?” (See id. at 614.) Travel agents have been found to owe a duty of reasonable care and diligence in selecting a wholesaler. (See Marcus v Zenith Travel, 178 AD2d 372, 372 [1st Dept 1991]; Bucholtz v Sirotkin Travel, 80 Misc 2d 333, 333-334 [App Term, 2d Dept 1974].) And they have been found to have a duty to confirm reservations, and will be liable when the traveler arrives at the destination without hotel accommodations. (See Bucholtz v Sirotkin Travel, 74 Misc 2d 180, 182 [Nassau Dist Ct 1973], affd 80 Misc 2d 333 [1974]; Odysseys Unlimited v Astral Travel Serv., 77 Misc 2d 502, 506 [Sup Ct, Nassau County 1974].) They have also been found to have a duty to provide “information which is necessary and of importance to the traveler,” such as visa requirements (see Levin v Kasmir World Travel, 143 Misc 2d 245, 247 [Civ Ct, NY County 1989]), the components of a tour package, and whether the purchase price is refundable (see Pellegrini v Landmark Travel Group, 165 Misc 2d at 593).
On the other hand, “[a] travel agent ordinarily is not an insurer or guarantor of its customers’ safety and, without a *167 specific request, is not obligated to investigate safety factors of lodging accommodations * * * Nevertheless, where the agent has knowledge of safety factors or where such information is readily available, a travel agent has the duty to inform the customer of those factors.” (Creteau v Liberty Travel, 195 AD2d 1012, 1012 [4th Dept 1993]; see also Passero v DHC Hotels & Resorts, Inc., 981 F Supp 742, 744 [D Conn 1996] [duty of “minimal investigation * * * unless there are special circumstances indicating that additional security measures are necessary”].)
When the quality of the accommodations, rather than safety, is the issue, the travel agent’s duty is similarly limited. And so one court has held that “when a traveler relies on the recommendations of a travel agent and suffers damage because of accommodations so totally unacceptable that any reasonable travel agent would have known not to make such recommendations, the travel agent is liable.” (Josephs v Fuller, 186 NJ Super 47, 51, 451 A2d 203, 205 [Dist Ct, Bergen County 1982].) “[A] travel agent who makes arrangements for a vacation not knowing anything about the accommodations, has acted negligently.” (See 186 NJ Super at 50, 451 A2d at 205; see also Tuohey v Trans Natl. Travel Inc., 47 Pa D & C 3d 250, 257 [Ct CP, Philadelphia County 1987] [“Defendants’ negligence was their complete failure to investigate the accommodations at the (hotel) prior to booking plaintiffs trip”].) One court has held that the “contract for a package vácation impliedly warrants the habitability of accommodations provided.” {See id. at 256 [hotel room without electricity or telephone].)
When the travel agent is found liable, such as for failure to provide hotel accommodations, damages may include resulting out-of-pocket expenses (see Spiro v Pence, 149 Misc 2d at 616), or a refund of all or part of the purchase price as compensation for “inconvenience and discomfort” (see Bucholtz v Sirotkin Travel, 80 Misc 2d at 183; Odysseys Unlimited v Astral Travel Serv., 77 Misc 2d at 506; but see Lumauig v Philippine Airlines, 624 F Supp 238, 239-240 [SD NY 1985]).
Applying these principals to the facts in this case, there is no evidence that Good Luck failed to exercise reasonable care in selecting the wholesaler; that Good Luck knew nothing about the accommodations at Lancaster Hall when it presented the hotel to Ms. Shlivko for her consideration; or that the accommodations were “so totally unacceptable” that it should have known not to present it. There was no evidence that Lancaster *168 Hall does not carry the three-star rating, or that Ms. Shlivko told Good Luck that daily linen service was an essential condition to an enjoyable vacation. Ms. Shlivko’s testimony that Good Luck “knows [her] requirements” is insufficient to expand the travel agent’s duty so as to require investigation about that aspect of service.
The only real issue here is whether Good Luck should be liable for the unsanitary conditions about which Ms. Shlivko testified, and which were not disputed. There is no evidence that Good Luck knew or had reason to know of the unsanitary conditions or even of the possibility; and, therefore, to the extent that Good Luck’s duty is only one of reasonable care, it might not be liable. If, however, this court follows the lead of the Pennsylvania court in Tuohey v Trans Natl. Travel Inc. (47 Pa D & C 3d 250 [1987]), and finds that there was a contract between Ms. Shlivko and Good Luck that included an implied warranty of habitability, Good Luck might well be liable. Under New York law, the warranty of habitability that is implied in all residential leases is breached by vermin infestation. (See Kekllas v Saddy, 88 Misc 2d 1042 [Nassau Dist Ct 1976]; Mayers v Kugelman, 81 Misc 2d 998 [Suffolk Dist Ct 1975].)
A number of courts have imposed a fiduciary duty on the travel agent, based upon an agency relationship with the customer, and the customer’s reliance on the agent’s expertise. (See Pellegrini v Landmark Travel Group, 165 Misc 2d at 595-596; Levin v Kasmir World Travel, 143 Misc 2d at 247; Bucholtz v Sirotkin Travel, 80 Misc 2d at 182-183; see also Das v Royal Jordanian Airlines, 766 F Supp 169, 171 [SD NY 1991]; but see Lumauig v Philippine Airlines, 624 F Supp at 239.) But it is at least questionable whether the relationship supports the duty, despite the “agency” characterization and the fact that the agent is “informed of the special needs of the client so the [agent] can perform the * * * service.” (See Northeast Gen. Corp. v Wellington Adv., 82 NY2d 158, 164 [1993].)
Even assuming such a duty, and that it includes a duty to investigate, the cases do not appear to have gone so far as to require investigation of the quality of the accommodations. (See Pellegrini v Landmark Travel Group, 165 Misc 2d at 595-596 [reviewing cases].) There appears to be more than a difference in degree between a hotel that is still under construction and without electricity, which was the situation in the Pennsylvania “warranty of habitability” case (see Tuohey v Trans Natl. Travel, 47 Pa D & C 3d at 252; see also Odysseys Unlimited v Astral Travel Serv., 77 Misc 2d at 504), and a hotel without certain services or that is dirty and unsanitary.
*169 Moreover, to impose liability on the travel agent for the quality of accommodations, either for failure to investigate or as a breach of implied warranty, seems inconsistent with appellate case law that the travel agent does not even have a duty to investigate safety factors of lodging accommodations “without a specific request.” (See Creteau v Liberty Travel, 195 AD2d at 1012; see also Weiner v British Overseas Airways Corp., 60 AD2d 427, 432-437 [2d Dept 1978].) When the travel agent has not “led the [customer] to believe that it was specifically assuming responsibility itself’ (see id. at 436), and is relying upon “a reputable and responsible” independent contractor (see id. at 437), liability should not be imposed for conditions “which it could not possibly have known of and had no reason to suspect” (see id.).
The scope of the “retail” travel agent’s duty and the traveler’s reasonable expectations should be well placed in the realties of the marketplace. (See Northeast Gen. Corp. v Wellington Adv., 82 NY2d at 160, 162, 165.) But, although these issues may more likely arise in the trial courts with limited jurisdiction, here the Small Claims Part, it is not at all likely that evidence will be available beyond the facts of the particular case. One can legitimately suspect, however, that most travel agents regularly arrange accommodations at a substantial number of different hotels and locations, and that in the usual case the compensation is on the order of that retained by defendant here, approximately 15% of the cost of the land portion of the trip. These considerations caution against the imposition of a strict liability with the potential of substantial monetary damages.
Marketplace realties also suggest, however, that the specific requests and inquiries of the traveler will differ depending upon whether the destination is a major European capital or a jungle safari, particularly with respect to amenities and creatures with four or more legs. Reasonable assumptions about such fundamentals as sanitary conditions and freedom from vermin would discourage specific request and inquiry when planning a London vacation. In addition, here we have uncontradicted testimony about assurances given by defendant’s representative that, although too general and indefinite to support an independent duty in contract or tort (see Vallery v Bermuda Star Line, 141 Misc 2d 395, 398-399 [Civ Ct, NY County 1988]; Wilson v American Trans Air, Inc., 874 F2d 386, 391 [7th Cir 1989]; Lavine v General Mills, Inc., 519 F Supp 332, 336 [ND Ga 1981]), would reinforce any duty to investigate in this case.
*170 The policy considerations that guide allocation of burdens of proof (see Oceanside Med. Healthcare v Progressive Ins., 2002 NY Slip Op 50188[U], *21-23 [Civ Ct, Kings County]) would be best served by allowing the traveler to make a prima facie showing with testimony and other evidence of the unsanitary condition, shifting to the travel agent the burden of at least coming forward with evidence that the condition did not exist or of due investigation. Defendant provided no evidence that Ms. Shlivko’s description was inaccurate or that any investigation was conducted. Defendant’s attempt to shift the burden of investigation to Ms. Shlivko, contending that she consulted the hotel’s Internet site, might be persuasive as to certain aspects of hotel service, but is unrealistic when the issue is cleanliness.
As to damages, although the court prefers to avoid characterizing defendant’s duty as “fiduciary,” the rule in fiduciary duty cases that measures damages by reference to the amount of the fiduciary’s compensation (see Restatement [Second] of Torts § 874, Comment b) seems well suited as a general principle to cases like this. Likewise, although the court also prefers to avoid characterizing defendant’s duty as an implied warranty of habitability, the amount of defendant’s fee is consistent with the percentage abatement that one might expect on a residential lease for a similar condition. (See Continental Gardens Apt. Corp. v Fardi, 2001 NY Slip Op 40524[U] [App Term, 2d & 11th Jud Dists].) On the other hand, the fact that Ms. Shlivko did not document with any photographs the conditions that she described, despite her conversations from London with her son, the attorney, suggests that the conditions were not the worst. The court concludes that $120 would adequately compensate her.
Judgment for claimant for $120, plus disbursements.