Dorothy W. LAVINE

v.

GENERAL MILLS, INC. d/b/a Olson-Travelworld Organization and Travelworld; Olson-Travelworld Organization, a Division of General Mills, Inc., and Ambassador Travel, Inc. d/b/a Rich's Travel Agency.

No. C79–1643A.

United States District Court, N. D. Georgia, Atlanta Division.

July 2, 1981.

Ben Weinberg and J. M. Hudgins, IV of Long, Weinberg, Ansley & Wheeler, Atlanta, Ga., for plaintiff.

Robert E. Corry, Jr. of Dennis, Corry, Webb, Carlock & Williams, Atlanta, Ga., for defendants.

## ORDER

NEWELL EDENFIELD, District Judge.

This action under the court's diversity jurisdiction seeking damages for personal injuries is before the court on defendants' motion for summary judgment, Rule 56(b), Fed.R.Civ.P.

In the summer of 1977, plaintiff began making plans for a fall trip in the South Pacific. In October of that year she purchased from defendant Ambassador Travel, Inc. d/b/a Rich's Travel Agency (Ambassador) a tour package to Australia, New Zealand and certain South Pacific islands. The tour package was planned and arranged by defendant Olson-Travelworld Organization (Travelworld), a business entity separate from and unrelated to Ambassador. Although Ambassador itself organizes travel packages, it also sells group tour packages planned and arranged by Travelworld and others.

The Travelworld tour plaintiff purchased through Ambassador was called "South Pacific Holiday." It was an escorted tour on which Steven E. Rosebaugh, a Travelworld tour manager, accompanied the group and arranged hotel accommodations, airport luggage handling, ground transportation and local guides.

The package consisted of a visit to Australia and New Zealand, and also included a separate, optional ocean cruise to the Fiji Islands. This three-day, two-night Fiji excursion was aboard a motor vessel owned and operated by the Blue Lagoon Cruising Company (Blue Lagoon), an entity unrelated to any of the defendants in this action. The Blue Lagoon cruise was booked by United Touring, Ltd. in Fiji, through Ambassador and Travelworld. United Touring, Ltd. also is a business entity unrelated to any of the defendants.

Although the Blue Lagoon cruise carried approximately forty passengers, only fifteen were members of plaintiff's Travelworld tour group. These fifteen were not segregated from the other passengers, however, and all passengers on the Blue Lagoon cruise received substantially the same service and accommodations. During this cruise, the captain and crew of the motor vessel served as guides for various points on the islands the passengers visited.

On the second day of the Blue Lagoon cruise, the motor vessel anchored so that the passengers could explore the island nearby. According to the depositions of several passengers, prior to disembarking, the captain assembled all passengers and explained to them the activities available on the island. This deposition testimony indicates that the captain warned the passengers of dangerous and slippery steps at the mouth of the caves on the island, and that he also warned them about dangerous and slippery rocks along the beach. Although plaintiff acknowledges being present while the captain addressed the passengers, she denies that she heard any warnings about slippery rocks and in fact denies that any such warning was given. The deposition testimony of one passenger indicates that plaintiff was talking to another passenger during the captain's address and that she was not paying attention to the warnings he gave.

Following the captain's address, plaintiff went ashore with other passengers, visited the island's caves, and then began to walk alone along the beach. According to plaintiff's deposition, she stopped adjacent to a rock with the intention of removing her shoe, looked down at the rock, placed her foot on it and fell backwards, breaking her right arm.

Immediately after plaintiff fell, tour manager Rosebaugh and others came to her assistance. A medical doctor, fellow-passenger Dr. Clifford R. Schneider, supervised moving plaintiff back to the vessel. Dr. Schneider then administered a sedative to plaintiff and applied an ice pack to her arm. Two passengers who were nurses attended plaintiff on the return voyage to the port of Lautoka.

After assisting in plaintiff's return to the motor vessel, Rosebaugh requested that the captain secure a helicopter to transport plaintiff to medical facilities on the main island. The captain was unable to secure a helicopter, however, since it was late in the day and the helicopters would not operate in darkness. Rosebaugh then persuaded the captain to terminate the cruise and return the vessel to the main island. Upon the vessel's arrival at Lautoka, plaintiff was transferred to a waiting ambulance that the captain had requested by radio, and she was immediately transported to the hospital. Plaintiff was x-rayed at the hospital, but she declined to permit the local physicians to treat her injuries. She was flown to Los Angeles, California several days later, and ultimately returned to her home in Atlanta for medical treatment.

According to the pretrial order entered February 23, 1981, plaintiff seeks to recover from defendants for her injuries on the grounds that defendants allegedly:

(1) Failed to warn her of a known hazardous condition (*i. e.*, the slippery rock);

(2) Failed to take adequate precautions to protect her as an invitee from latent defects (*i. e.*, the slippery rock);

(3) Failed to provide to her adequate medical care, equipment, supplies or staff in order to handle known medical emergencies;

(4) Failed to select and retain a competent and experienced tour manager trained in the handling of known medical emergencies; and

(5) Failed to select and retain a competent cruise operator and captain.

Thus plaintiff apparently claims that some or all of these failures constituted negligence by defendants, or that defendants breached certain warranties or contractual obligations they owed to plaintiff. Plaintiff relies upon "the general common law principles of tort and contract law as codified in Ga.Code Ann. Title 20 and 195," but has abandoned her reliance "on certain safety regulations existing in the Fiji Islands at the time of the accident." Pretrial Order at 8. *See infra.*

Defendants move for summary judgment on the ground that there is no factual issue for trial on either of two questions: that defendants breached no legal (tort) duty to plaintiff, and that they breached no contractual duty to her. Accordingly, defendants argue, they are entitled to judgment as a matter of law.

■ Although plaintiff's injuries occurred in the Commonwealth of Fiji and, under Georgia's application of the conflict of law doctrine lex loci delicto, the court should apply that country's substantive law to gauge liability, the parties agree that Georgia law should apply in this case due to the insurmountable difficulty in obtaining Fiji authority. Accordingly, since neither party has come forward to prove the applicable Fiji law, the court will apply Georgia's substantive law to this claim. *See Commercial Insurance Co. of Newark v. Pacific-Peru Construction Corp.*, 558 F.2d 948, 952 (9th Cir. 1977).

The court is convinced that plaintiff's claims against these defendants must fail for several reasons.

■ To the extent that plaintiff's first two claims are based upon premises liability (*i. e.*, failure to warn of a hazardous condition, failure to protect an invitee), they support no cause of action against these defendants, since neither of them was the owner or occupier of the island where plaintiff fell. In addition, pretermitting consideration of any warning that may have been given, the court can discern no duty that these defendants owed to plaintiff to warn her of or to protect her from the hazard that caused her injury. Plaintiff cites no direct authority recognizing such duty, and this court declines to impose one on the facts presented here.

■ An essential premise supporting much of plaintiff's claim is that the Blue Lagoon Cruising Company, not a defendant, was defendants' agent and that defendants are liable for their agent's alleged transgressions. That assertion ignores the plain

facts, however. The record indicates beyond peradventure that Blue Lagoon was an independent contractor that provided a service to defendants and their tour members. Plaintiff argues that since the vessel returned to port at her tour manager's request following her injury, the vessel was under her tour manager's control and therefore Blue Lagoon was defendants' agent. The record makes clear, however, that Blue Lagoon was not defendants' agent, and plaintiff's dubious assertions, without more, are insufficient to create any factual issue on that point.

■ Plaintiff's third and fourth allegations, relating to defendants' failure to provide adequate medical care, present no material factual issue. Even if these defendants owed some duty to plaintiff in this regard (a question the court need not reach), plaintiff fails to advance any evidence of injury caused by that alleged failure to provide adequate medical care. Merely alleging some "negligence in the wind" is not sufficient to support a tort claim, nor may plaintiff prevail on any contract theory absent some showing of damages. Plaintiff does not contend that defendants' alleged failure to provide proper medical care contributed to her fall. Her complaint is only addressed to some exacerbation of her suffering or permanent injury caused by that alleged failure. The undisputed facts, however, reveal that plaintiff was attended by a physician and two nurses immediately following her injury, and that she was under constant medical attention until transported to the hospital by a local ambulance. The record is devoid of any credible evidence that plaintiff's injury or suffering were aggravated by lack of medical care.

■ Plaintiff's final ground, that defendants failed to select a competent cruise operator and captain, also misses the mark. The court is simply unable to discern any connection between the cruise operator or captain's competence and plaintiff's slip and fall. Even if plaintiff were able to show that these defendants breached some duty to her by selecting an inept operator or captain, no proximate cause exists linking that alleged shortcoming with plaintiff's mishap.

■ In addition, plaintiff fails to support her claim that defendants warranted her safety on this excursion, or that they contractually guaranteed it. Even if it were made, a general promise that the trip would be "safe and reliable" does not constitute a guarantee that no harm would befall plaintiff, particularly from as obvious a danger as traversing a rocky beach.

The court also notes that plaintiff agreed to be bound by the following statement of responsibility in the tour agreement:

Travelworld ... acts only as agent for the hotels, airlines, bus companies, railroads, ship lines, or owners or contractors providing accommodations, transportation or other services ...

... By the acceptance of tour membership, the tour member agrees to the foregoing and also agrees that neither Travelworld nor any of its affiliates or subsidiaries shall be or become liable or responsible for any loss, injury or damage to person, property or otherwise in connection with any accommodations, transportation or other services, resulting directly or indirectly from any acts of God [or] dangers incident to the sea ... or from any causes beyond Travelworld's control ....

This provision is plain evidence that Travelworld undertook no warranty or contractual guarantee of plaintiff's safety on her cruise.

Although the parties cite numerous cases to support various points in their briefs, only a handful of these cases involve the narrow issue of a travel agent's liability for injury to its patrons while on a tour it sold or arranged. *See* Annot. 53 A.L.R.3d 1310 (1973 & Supp.1980). Although no Georgia cases address that question, a review of several decisions from other jurisdictions is instructive in assessing the instant motion.

In *Dorkin v. American Express Co.*, 74 Misc.2d 673, 345 N.Y.S.2d 891 (Sup.Ct.Albany Co.), *aff'd.*, 43 A.D.2d 877, 351 N.Y.S.2d 190 (3d Dept. 1974), plaintiff and her hus-

band sued for injuries she sustained when the tour bus she was riding in Europe braked suddenly causing her to fall. She sued American Express, the tour arranger, alleging that her injuries were caused by the negligence of American Express's agent or servant bus operator, and that American Express had breached its warranty and contract obligation to select fit, safe and proper transportation facilities. In upholding summary judgment in favor of American Express, the Appellate Division noted that the tour bus operator was an independent contractor, the negligent acts of which were not chargeable to American Express. Moreover, the court ruled that American Express had only contracted to provide a planned European tour with meals, lodging and transportation and that it had made no express or implied warranty of safety. The court relied upon a disclaimer provision in plaintiffs' tour contract that was similar to the disclaimer in the instant case as evidence that American Express did not intend to assume any contract obligation guaranteeing safety.

In a similar case, *Pena v. Sita World Travel, Inc.*, 88 Cal.App.3d 642, 152 Cal. Rptr. 17 (Ct.App.1978), the court upheld dismissal of two counts of plaintiff's complaint, one based upon strict liability and the other for indemnification. Plaintiff brought suit to recover for injuries she sustained in a bus accident while on a packaged tour of Mexico arranged by defendant Sita. The court held that neither the tour arranger nor the travel agent that sold plaintiff the tour could be held liable for her injuries under these theories.

The case factually closest to the instant case is *Raskin v. Ulysses Lines, Ltd.*, No. 79 Civ. 4275 (HFW) (S.D.N.Y. Sept. 10, 1980), in which plaintiff sought to recover for injuries she suffered while a ship passenger. Plaintiff fell and injured herself aboard the ship while it was docked in Rumania. She sued the ship's owner and operator and also the travel agent who sold her the cruise, Sovereign Holidays, Ltd. (Sovereign). In granting summary judgment in Sovereign's favor, the court held that plaintiff's claims of negligence and unseaworthiness against the travel agent must fail, since it did not own, operate or manage the vessel. With respect to plaintiff's third cause of action, that Sovereign was negligent in investigating the ship's safety, the court stated that Sovereign, as a travel agent, "did not stand in a relationship vis-a-vis plaintiff such as to owe a duty to her to investigate the safety of the vessel. Defendant agreed to arrange a tour and supply a ticket to plaintiff; it did not insure her safety aboard the vessel." The court also disposed of plaintiff's contention that Sovereign's brochures expressly warranted the vessel's safety and seaworthiness, by ruling that statements that the vessel meets certain safety standards "falls woefully short of imposing liability upon Sovereign for breach of express warranty . . . ." *See also Weiner v. British Overseas Airways Corp.*, 60 A.D.2d 427, 401 N.Y.S.2d 91 (2d Dept. 1978).

Although each of these cases is distinguishable in various respects from the case at bar, the plain trend they reflect refuses to impose liability upon travel agents for injuries such as plaintiff's regardless of the theory advanced. This trend further supports the court's conclusion that defendants' motion for summary judgment should be granted.

The court does not question the good faith of plaintiff in honestly feeling that she should be compensated for this injury. There is a fallacy, which seems to be widely accepted, that for any personal injury, however caused, some person or instrumentality should be liable in damages. Such is not and has never been the law. The court does mildly chastise counsel for not having exposed this fallacy when the case was presented. The plain facts are: first, that these defendants were not plaintiff's agents. Long before they ever knew plaintiff, they were and had been agents for the travel services they represented, their only function being to sell and arrange travel tours for those who might wish to purchase them. This they did. Second, certainly there was no warranty of plaintiff's safety. The tour agreement expressly provides the contrary. Third, even had defendants been

agents of the plaintiff (which they were not), the court can see no conceivable duty on their part that was breached by them so as to make out a claim of negligence. There is hardly a person living who has not at one time or another slipped upon a rock, and not the slightest claim is made or evidence presented that the defendants caused or in any way contributed to the slip in this case. Not even a railroad, an airline or any other public carrier is an insurer of the safety of its passengers where its instrumentalities are not defective or its employees are not negligent. There is simply no legal liability in this case.

Plaintiff's dissatisfaction with the accommodations and service defendants provided to her on her ill-fated cruise is evident in the record. However, this lawsuit cannot be used as a vehicle to vindicate those complaints. Defendants' motion for summary judgment is GRANTED.