Mercedes CONNOLLY, Plaintiff,

v.

Judy SAMUELSON, d/b/a International Tours of Manhattan, and Above and Beyond, Inc., d/b/a International Tours of Manhattan, Defendants.

Civ. A. No. 86–2284.

United States District Court, D. Kansas.

Aug. 5, 1987.

Jeff Keal, Thomas Francis Sullivan, Mission Woods, Kan., for plaintiff.

John A. Bausch, Stan Oyler, Ascough, Bausch, Eschmann, Topeka, Kan., for defendants.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

Pending before the court is defendants' motion for summary judgment. Plaintiff brings this action for negligence, breach of contract and breach of implied warranty against the defendants who organized and promoted a tour of South Africa. While on a walking tour at the Sabi Sabi Reserve, plaintiff fell and injured her ankle and leg.

Plaintiff alleges that the defendants were negligent in the following particulars: failing to advise plaintiff that a walking tour was part of the itinerary at the Sabi Sabi Reserve; failing to advise plaintiff of the proper footwear for the walking tour; failing to know of the walking tour conditions; failing to know the standard operating procedures at the reserve concerning the walking tour conditions; failing to advise plaintiff of the standard operating procedures; and failing to provide plaintiff with a safe and secure tour. Plaintiff contends that defendants were acting as common carriers and owed her the highest duty of care at the time of her injury. Plaintiff also alleges that the defendants are responsible for the wrongful acts of their agent, the ranger at the reserve, who forced plaintiff to continue with the tour even though plaintiff had requested to return to the base camp. Alternatively, plaintiff claims that the defendants are liable to her under the theory of *res ipsa loquitur*.

With respect to the breach of contract and implied warranty claims, plaintiff alleges that she entered into a contract with the defendants for the tour services which included an implied covenant that the defendants would provide their tour services consistent with her personal safety. Plaintiff alleges that defendants breached this implied covenant.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must look at the record in the light most favorable to the nonmoving party, liberally construing pleadings and documentary evidence in favor of the party opposing the motion. *Thomas v. United States Dept. of Energy,* 719 F.2d 342, 344 (10th Cir.1983). The party resisting a motion for summary judgment, however, must set forth specific facts showing that there is a genuine issue for trial. *Dart Industries, Inc. v. Plunkett Company of Oklahoma, Inc.,* 704 F.2d 496, 498 (10th Cir.1983). The standard for granting summary judgment "mirrors the standard for a directed verdict under Rule 50(a) of the Federal Rules of Civil Procedure." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In essence, the court must decide "whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*

## I. FACTS.

For purposes of this motion, the following material facts are uncontroverted:

1. The defendant Judy Samuelson, is the owner-operator of the defendant Above and Beyond, Inc., d/b/a International Tours of Manhattan.

2. African Adventures, a South African tour operator and organizer, was selected by a committee of the Bovine Practitioners Association to be the official ground operator and to arrange for and conduct tours before and after the association's 1984 International Congress on Diseases of Cattle.

3. The defendants were designated as agents in the United States to promote the Congress and the accompanying tours. The defendants received a commission of 10–20% on each tour member.

4. Defendants and African Adventures worked in tandem on the tour for the benefit of the tour group. Defendants' functions were to coordinate travel and tour arrangements for their customers and organize and finalize a tour from beginning to end.

5. Once the intinerary for the tour was approved by the Bovine Practitioners, defendants printed a tour brochure, which was distributed to members of the Bovine Practitioners Association.

6. Plaintiff admits receiving the defendants' itinerary and brochure.

7. Contained in the brochure was the following information:

International Tours of Manhattan act only as agents for the passenger in regard to travel, whether by railroad, motorcoach, motorcar, boat or airplane and assume no liability for injury, damage, loss, accident, delay or irregularity which may be occasioned either by reason of defect in any vehicle or for any reason whatsoever, or through the acts of default of any company or person engaged in conveying the passenger or in carrying out the arrangements of the tour.

8. The plaintiff and her husband paid Samuelson a deposit for their tours. Plaintiff received a receipt for their deposit, containing the following language:

International Tours acts only as agent for its principals, all suppliers of travel accommodations, including those represented on this invoice, and is not liable for the acts or negligence of such suppliers.

9. The defendants' tour was considered a scheduled motorized safari. The tour members were never informed that a walking tour through the bush and countryside was part of the tour itinerary.

10. Samuelson was designated the tour escort for the tour.

11. The average age of the tour members was sixty-five.

12. On September 22, 1984, following the association's conference, the tour group, comprised of approximately thirty-two people, embarked on their tour. On September 25, 1984, the group traveled to the Sabi Sabi Game Reserve.

13. Following an early morning safari on September 26, the African Adventures tour guide, Carl Hasselbrook, announced to the tour group that Sabi Sabi rangers had spotted hippopotami at the river. According to defendants, Hasselbrook asked how many would like to go see the hippopotami. Those who desired to do so were informed that they could take a walking safari and walk to the river, located approximately 200 yards from the lodge. According to plaintiff, however, plaintiff and the entire tour group were required to go on the walking tour.

14. The walk was a spontaneous event arranged by the Sabi Sabi Reserve and Hasselbrook of African Adventures. Samuelson learned of the walk at the same time as all other members of the tour group.

15. No instructions as to the nature of the walking tour or special attire were given prior to leaving the lodge compound. The members, however, could see part of the terrain to be negotiated by looking in

the direction the guides were pointing. Samuelson never inquired as to what terrain or obstacles the tour members might encounter.

16. Plaintiff did not have any boots of any type and wore only walking shoes. Samuelson wore similar shoes, which she considered safe for the walk. The rangers wore high boots.

17. The tour group split into two walking parties. The plaintiff and her husband were in one and Samuelson and her husband in the second. Each group was accompanied by Sabi Sabi rangers and each set out in different directions toward the river.

18. After the group embarked on its walk, plaintiff requested on at least two occasions that she return to the base camp because she had been bitten by a spider and the terrain had become more difficult to negotiate. Both requests were made at a time when the base camp was in view and approximately 100 yards away. The ranger refused both of plaintiff's requests and would not allow her to return to the base camp alone or accompanied by her husband or one of the guides.

19. Plaintiff's group encountered a small stream, three feet wide with rocks across it. To get to the river, the group was required to cross the stream. The water was approximately six to eight inches deep.

20. Plaintiff again requested that she be returned to the base camp, and the ranger again refused her request.

21. Each member of plaintiff's group crossed the stream by walking over the rocks. By doing so, they kept their feet dry and free of mud.

22. After attempting to view the hippopotami, the group turned back toward base camp. When plaintiff attempted to cross back over the stream bed, she slipped and fell on one of the rocks, causing injuries to her left ankle and leg.

23. Samuelson learned of plaintiff's fall when she returned to the lodge area and went to assist plaintiff. Samuelson accompanied plaintiff to a hospital.

24. The facts are in dispute as to whether Samuelson had the authority to control Carl Hasselbrook or any employees of African Adventures or the Sabi Sabi Game Reserve.

## II. ANALYSIS.[*]

### A. *Negligence:*

#### 1. *Common Carrier Liability.*

A common carrier is defined as an entity that holds itself out to the public as engaged in the business of transporting persons from place to place for compensation and that offers its service to the public in general. 13 Am.Jur.2d *Carriers* § 2 at 560. Common carriers are required to use the highest degree of skill, care and foresight in protecting their passengers from injuries. *King v. Vets Cab, Inc.*, 179 Kan. 379, 382–83, 295 P.2d 605, 608 (1956). Plaintiff argues that defendants as well as African Adventures and the Sabi Sabi Reserve were "in a combined carrier status at all times and Plaintiff was a passenger at the time of her injury whether she was walking, running, riding, and/or alighting

---

[*] The court notes that the parties have not addressed the issue of what state or country's laws the court should apply. The parties have merely assumed that Kansas substantive law applies and, accordingly, have based their analysis upon Kansas law. Clearly, under Kansas choice-of-law rules, the doctrine of *lex loci delicto* would require the court to apply South African law to plaintiff's negligence claims. *See Ling v. Jan's Liquors*, 237 Kan. 629, 634, 703 P.2d 731, 735 (1985). Furthermore, the doctrine of *lex loci contractus* would have us apply the law of the state where the contract was made with respect to plaintiff's contract and warranty claims. *See Simms v. Metropolitan Life Ins. Co.*, 9 Kan.App.2d 640, 642, 685 P.2d 321, 324 (1984). From the record it is unclear whether the last act necessary for formation of the contract occurred in Kansas or Illinois where plaintiff resided, and thus it is possible that Illinois rather than Kansas substantive law should apply to plaintiff's contract and warranty claims. *See Id.* at 642–43, 685 P.2d at 324. However, since the parties have not come forward with any arguments concerning these issues, and given the difficulty of obtaining South African law, the court will apply the substantive law of Kansas to all of plaintiff's claims.

to and from a vehicle at the time of the accident."

The court is not persuaded that travel agents such as defendants are common carriers. Even assuming that defendants may be properly characterized as common carriers, we do not find that common carrier liability attaches under the facts of this case. A common carrier's obligation exists incident only to the transportation of its passengers. Thus, a common carrier's duties extend to safely receiving and carrying its passengers. *Id.* Its obligations continue while the passenger is leaving or alighting from the carrier's conveyance. *Id.* When plaintiff was injured in this case, she was not being received or carried by the defendants, nor was she alighting from the defendant's conveyance. Plaintiff was injured while walking during her stay at the Sabi Sabi Reserve. She was not a passenger of the defendants when the accident occurred, and thus no common carrier liability may attach.

## 2. *Res Ipsa Loquitor.*

Plaintiff contends that the doctrine of *res ipsa loquitor* applies to the facts of this case. To establish a claim of negligence under this doctrine, three elements must be proven. First, the instrument causing the injury must have been in the exclusive control of the defendants. *Querry v. Montgomery Ward & Co., Inc.,* 217 Kan. 104, 108, 535 P.2d 928, 933 (1975). Second, the happening must have been "of such a nature as ordinarily does not occur in the absence of negligence." *Id.* Third, the happening must not have been due to the fault or contributory negligence of the plaintiff. *Id.* at 109, 535 P.2d at 933. Plaintiff argues that the defendants had exclusive control of the instrumentality causing plaintiff's injury, the instrumentality being the walking tour supervised by Samuelson and her agents.

We find the doctrine of *res ipsa loquitor* inapplicable to the facts in this case. It is not clear exactly what instrumentality or thing caused plaintiff's injury; it could have been the rock, the water, the shoes plaintiff was wearing, or plaintiff's own actions, none of which were in the exclusive control of the defendants. It is clear, however, that it was not the walking tour, as plaintiff argues. Furthermore, plaintiff has made no showing that the event was "of such a nature as ordinarily does not occur in the absence of negligence." Indeed, a fall on a slippery rock is exactly the type of event that *does* occur in the absence of negligence. Because essential elements necessary to support the doctrine of *res ipsa loquitor* are lacking in this case, plaintiff's allegations under this doctrine must fail.

## 3. *Duties Owed to Plaintiff.*

It is a fundamental rule in Kansas that negligence exists only where there is a duty owed by one person to another and a breach of that duty occurs. *Durflinger v. Artiles,* 234 Kan. 484, 488, 673 P.2d 86, 91 (1983). The Kansas courts have not addressed the duty, if any, of a travel agent to its clients under circumstances similar to this case. This court has, however, reviewed the few decisions from other jurisdictions dealing with the liability of travel agencies to tourists who injure themselves while on tours sold to them by the agencies. The majority of these cases refuse to impose liability upon travel agents for injuries such as plaintiff's, regardless of the theories advanced. *See, e.g., Lavine v. General Mills, Inc.,* 519 F.Supp. 332 (N.D. Ga.1981); *Raskin v. Ulysses Lines, Ltd.,* No. 79–Civ. 4275 (S.D.N.Y., *unpublished,* Sept. 10, 1980) (cited in *Lavine, supra*); *Weiner v. British Overseas Airways Corp.,* 60 A.D.2d 427, 401 N.Y.S.2d 91 (1978); *Dorkin v. American Express Co.,* 74 Misc.2d 673, 345 N.Y.S.2d 891 (N.Y. Sup.), *aff'd,* 43 A.D.2d 877, 351 N.Y.S.2d 190 (1974); *Pena v. Sita World Travel, Inc.,* 88 Cal.App.3d 642, 152 Cal.Rptr. 17 (Ct.App.1978).

The facts in the *Lavine* decision are almost identical to those in the case at bar. Plaintiff in that case purchased a cruise package from the defendant travel agencies. On the second day of the cruise, the motor vessel anchored on an island so that the tour group could explore the island. While exploring, plaintiff slipped on a rock

on the beach and injured herself. Plaintiff sued the travel agencies, alleging that they were negligent in failing to warn her of a known hazardous condition (i.e., the slippery rock) and failing to take adequate precautions to protect her as an invitee from latent defects (i.e., the slippery rock). The court in *Lavine* held that, even assuming the defendant travel agents had been agents of the plaintiff, they owed no conceivable duty to the plaintiff. The court noted:

> There is hardly a person living who has not at one time or another slipped upon a rock, and not the slightest claim is made or evidence presented that the defendants caused or in any way contributed to the slip in this case. Not even a railroad, an airline or any other public carrier is an insurer of the safety of its passengers where its instrumentalities are not defective or its employees are not negligent. There is simply no legal liability in this case.

*Lavine*, 519 F.Supp. at 338.

We agree with the reasoning of the *Lavine* case and the other above cited cases and hold that defendants had no duty to advise plaintiff that a walking tour was part of the itinerary at Sabi Sabi, to advise plaintiff of the proper footwear, to know of the walking tour conditions, to know or advise plaintiff as to the standard operating procedures at Sabi Sabi, or to provide plaintiff with a safe and secure tour. As the court noted in *Lavine*, there is a fallacy, which seems to be popularly accepted, that for any personal injury, however caused, some person should be liable in damages. *Id.* at 337. This, however, is not the law and should not be the law. In light of the foregoing, the court will grant summary judgment in favor of defendants on the above mentioned negligence claims.

### 4. The Exculpatory Clause.

■ Alternatively, the court concludes that defendants are not liable to plaintiff for the above-mentioned negligence claims because of the exculpatory clause set forth in the defendants' brochure, which plaintiff admits receiving. In that brochure, the defendants provided that they would act only as agents for the passenger in regard to travel and would "assume no liability for injury, damage, loss, accident, delay, or irregularity ... for any reason whatsoever."

Kansas courts have long recognized the validity of exculpatory agreements relieving a party from liability, unless it would be against the settled public policy to do so. *See, e.g., Belger Cartage Service, Inc. v. Holland Construction Co.*, 224 Kan. 320, 329, 582 P.2d 1111, 1118 (1978); *Hunter v. American Rentals*, 189 Kan. 615, 617, 371 P.2d 131, 133 (1962). Exculpatory contracts, however, "are not favored by the law and are strictly construed against the party relying on them." *Cason v. Geis Irrigation Co.*, 211 Kan. 406, 411, 507 P.2d 295, 299 (1973). The terms of the agreement are not to be extended to situations not plainly within the language employed. *Baker v. City of Topeka*, 231 Kan. 328, 334, 644 P.2d 441, 446 (1982). It is not necessary, however, that the agreement contain specific or express language covering in so many words the party's negligence, if the intention to exculpate the party from liability appears from the contract, the surrounding circumstances, and the purposes and objects of the parties. *Bartlett v. Davis Corp.*, 219 Kan. 148, 159, 547 P.2d 800, 806 (1976).

We believe it is clear from the language contained in the defendants' brochure that defendants were to act only as agents for plaintiff in arranging transportation. There is no question that defendants intended to exculpate themselves from liability for either their own negligence or the negligence of any other persons transporting the plaintiff. Thus, even if we were to hold that the defendants had been negligent as claimed by plaintiff, this exculpatory clause would relieve defendants from liability under the facts here.

### 5. Liability for the Ranger's Acts.

■ We will next address the related issue of whether defendants may be held liable for the allegedly wrongful acts of the ranger at the Sabi Sabi Reserve, who plaintiff claims forced her to continue with the tour although she had requested to return

to camp. Assuming, without deciding, that the ranger did in fact act negligently and that defendants were either part of a joint venture or agency relationship with African Adventures and the Sabi Sabi Reserve, as plaintiff claims, the defendants are not liable for the ranger's acts. The same brochure discussed above in paragraph 4 contained a paragraph stating that defendants would assume no liability for injury "through the acts of default of any company or person engaged in conveying the passenger or in carrying out the arrangements of the tour." Defendants' deposit receipt also contained language stating that defendants acted "only as agent for its principals, all suppliers of travel accommodations, including those represented on this invoice, and is not liable for the acts or negligence of such suppliers." The defendants' intention to exculpate themselves from the liability of any other company or person supplying transportation, travel accommodations, or any other a rrangements of the tour is clear. Defendants, therefore, cannot be held liable for any negligent acts of the Sabi Sabi Reserve ranger.

B. *Plaintiff's Breach of Contract and Warranty Claims.*

 Plaintiff alleges that the defendants impliedly covenanted and warranted that they would provide plaintiff with a safe tour. Implied covenants are generally not favored by the law and will always be construed narrowly. *Columbian Nat'l Title Ins. Co. v. Township Title Services, Inc.*, 659 F.Supp. 796 (D.Kan.1987). Courts will not imply covenants or terms, where the subject thereof is expressly covered by the contract, or as to which the contract is intentionally silent, or which is against the overall intention of the parties as garnered from the entire instrument. *Id.* at 806.

 The provisions in the defendants' brochure and deposit receipt exculpating defendants from any liability are plain evidence that defendants undertook no warranty or contractual guarantee of plaintiff's safety on her trip. We will therefore grant defendants summary judgment on

plaintiff's breach of contract and warranty claims.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment is granted. The clerk of the court is directed to enter judgment in favor of defendants and against plaintiff. The clerk is further directed to assess costs in favor of defendants.