**Doris FLING, et al., Plaintiffs,**

v.

**HOLLYWOOD TRAVEL AND TOURS, et al., Defendants.**

**No. 5:89 CV 2182.**

United States District Court, N.D. Ohio, E.D.

Sept. 26, 1990.

Stanley P. Aronson, William Frank Mikesell, Aronson & Waller, Akron, Ohio, Edwin Davila, Ross & Robertson, Canton, Ohio, for plaintiffs.

James A. Climer, Richard A. Williams, Thomas S. Mazanec, Sr., Mazanec, Raskin & Ryder, Solon, Ohio, for defendants.

## MEMORANDUM OPINION

DOWD, District Judge.

### I. INTRODUCTION.

On December 5, 1987, during a vacation to Freeport, Grand Bahamas, plaintiff Doris Fling was shot in the shoulder by a gunman after plaintiff, her husband, plaintiff Jack Fling (hereinafter "plaintiffs") and two other companions were robbed at gunpoint approximately 200 yards from their hotel, the Emerald Star.[1] The attack occurred at approximately 10:00 p.m. as the group walked back to their hotel room from a casino located one to two blocks away.

Plaintiffs were solicited by a West Virginia campground development company to attend a sales presentation in exchange for a free trip to the Bahamas. Plaintiffs attended the presentation and were given a vacation certificate. The certificate was redeemable through defendant Passkey International, the company which packaged plaintiffs' vacation, and defendant Hollywood Travel and Tours, the booking agent for the vacation (hereinafter "defendants").[2] Defendants supplied plaintiffs with a brochure, question and answer sheet, and a confirmation letter. Defendants arranged airfare from Florida to the Grand Bahamas and made reservations for plaintiffs at the Emerald Star Hotel. According to Doris Fling, plaintiffs were warned while aboard ship to their island in the Bahamas that they should not walk alone at night. Doris Fling Depo., at 111 (docket # 30).[3] Following the attack plaintiffs were told by two natives of the Bahamas that the area around the hotel was a high crime area. Doris Fling Depo., at 96–97.

Defendants had a contract with the Emerald Star Hotel to supply lodging for travelers using defendants' certificates. According to the undisputed assertion of defendant Passkey International's President Michael Tellshow, defendants have sent over 20,000 travelers to the Emerald Star Hotel and that the incident in question is the only complaint from hotel patrons using defendants' services relating to threats to personal safety. Defendant's Motion for Summary Judgment, Exhibit A, Affidavit of Michael Tellshow, Para. 10. Tellshow further stated that he had stayed at the Emerald Star Hotel on several occasions since 1985 or 1986 and that he observed no conditions in the vicinity of the hotel that would lead him to believe that the hotel was located in a high crime area. Tellshow Affidavit, Para. 11.

In this diversity action, plaintiffs allege that defendants arranged hotel facilities located in what plaintiffs claim was a known high crime area without adequate warning of the possibility of attacks by criminals in the area of the hotel.

Before the Court is defendants' motion for summary judgment. Defendants argue that as travel agents or tour operators, the law does not make them insurers of plaintiffs' safety. Defendants deny any duty to warn plaintiffs of allegedly hazardous conditions and if such a duty is imposed, disclaim any knowledge that the Emerald Star was located in an allegedly unsafe area.

---

1. Plaintiff Jack Fling has sued for loss of consortium.

2. The now bankrupt West Virginia campground developer paid the cost of travel arrangements to defendants and were then issued a vacation certificate.

3. Apparently, the warning was issued by the ship's tour director although it is unclear from the record whether or not she was an employee of defendants.

Plaintiffs have filed a response to the defendants' motion for summary judgment and defendants have filed a reply brief. On September 6, 1990, the court heard oral arguments on the motion for summary judgment. Following the hearing, plaintiffs filed supplemental materials in opposition concerning crime statistics in the Bahamas. Defendant has filed a motion to exclude plaintiffs' additional evidence.

For the reasons that follow, the defendants' motion for summary judgment is granted.

## II.  SUMMARY JUDGMENT STANDARD.

It is well established that when considering a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, "the inferences to be drawn from the underlying facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions] must be viewed in the light most favorable to the party opposing the motion." *U.S. v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *United States v. Hodges X-Ray, Inc.*, 759 F.2d 557 (6th Cir.1985); *Tee-Pak, Inc. v. St. Regis Paper Co.*, 491 F.2d 1193 (6th Cir.1974); *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir.1962). However, the non-moving party bears the responsibility to demonstrate that summary judgment is inappropriate under Rule 56(e). The "adverse party may not rest upon the mere allegations or denials of [his] pleadings, but [his] response, by affidavits or otherwise ..., must set forth specific facts showing there is a genuine issue for trial. If [he] does not so respond, summary judgment, if appropriate, shall be entered against [him]." Fed.R.Civ.P. 56(e).

A court may grant summary judgment only if there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R. Civ.P. 56(c). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968)). Therefore, "[i]f the evidence is merely colorable, ..., or is not significantly probative, summary judgment may be granted." *Id.*, 477 U.S. at 249–250, 106 S.Ct. at 2511 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967) (*per curiam*); *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. at 290, 88 S.Ct. at 1593). " 'The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.' " *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir.1989) (quoting *Anderson v. Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512). Moreover, summary judgment is appropriate when the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

In sum, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511.

## III.  DISCUSSION.

### A.  *Choice of Law.*

Plaintiffs are Ohio residents and defendants are Florida domiciliaries. Although the conduct causing the plaintiffs' injuries occurred in the Bahamas, both parties mainly cite Ohio law as governing resolution of this dispute. Since neither party

has come forward using the law of the Bahamas, the Court will apply Ohio's substantive law to this claim. *See Lavine v. General Mills, Inc.*, 519 F.Supp. 332, 335 (N.D.Ga.1981).[4]

### B. *Defendants' Duty of Care.*

The threshold question concerning defendants potential liability to plaintiffs is the "duty" question or, in other words, whether defendants, as travel agents, were obligated to warn plaintiffs of potential harms in the Bahamas. A secondary question is what standard of care attaches to that alleged duty, which presents plaintiffs' claim of breach of duty or negligence.

Prosser defines duty as "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." *Prosser on Torts*, Section 53, at 324 (1977). Although "changing social conditions lead to the creation of new duties," there is still no general duty of due care owed such that persons without a legal duty, i.e. no legally recognized relationship or statutory mandate, must insure the safety of others. *Id.* at 325.

There is no case law in Ohio and little case law elsewhere concerning a travel agent's duty to warn clients of any unusual or unreasonable hazards at destinations to which they are traveling. *See Lavine v. General Mills, Inc.*, 519 F.Supp. 332 (1981) and *Wilson v. American Trans Air, Inc.*, 874 F.2d 386 (7th Cir.1989), discussed *infra*. Defendants have argued that analogous Ohio case law pertaining to innkeepers and passenger carriers and the law of other states should be used to determine the question of whether or not a travel agent has a duty to protect his or her clients by warning them of the possibility of third party attacks. Under present Ohio law, a motel must conform to a standard of ordinary care in providing security for its guests. *Meyers v. Ramada Inn of Colum-*

*bus*, 14 Ohio App.3d 311, 313, 471 N.E.2d 176 (1984). If there are "special circumstances" shown, such as previous assaults in the motel, or that the motel is located in a high crime area, ordinary care may require additional security measures. *Id.*

■ Plaintiffs argue that plaintiffs and defendants' relationship was that of a principal-agent. In Ohio, the duties an agent owes his principal are a duty of good faith and obedience, a duty of loyalty, a duty of skill, care, and diligence and a duty to disclose certain information to his principal. *See Connelly v. Balkwill*, 160 Ohio St. 430, 116 N.E.2d 701 (1954). However, the duty of an agent is shaped by the scope of the agency. In cases from other jurisdictions involving travel agents, no duty of investigation is imposed on the travel agent and unless the travel agent knew or should have known of the potential harm that occurred, no duty arises to warn the traveler of the particular hazard. *Lavine v. General Mills, Inc., supra; Wilson v. American Trans Air, Inc., supra; United Airlines, Inc. v. Lerner*, 87 Ill.App.3d 801, 43 Ill.Dec. 225, 228, 410 N.E.2d 225, 228 (1980) (Travel agent "is a special agent, akin to a broker, which engages in a single business transaction with the principal.... The law requires only that agents be loyal, not prescient").

■ While Ohio law illustrates an agent's general duty toward his principal, no Ohio case law has been presented in the travel agent context. The Court is persuaded that an Ohio court would follow cases from other jurisdictions that have decided factually similar claims and apply them in a manner consistent with the duties imposed in the innkeeper-patron relationship. *See Ramada Inns, supra.* Accordingly, unless plaintiff shows evidence of special circumstances, e.g. prior attacks or exposure to a "high crime area," [5] no duty is imposed defendants to investigate

---

4. Defendants also suggest that Florida law may be applicable because defendants are Florida domicilaries. However, the outcome in this case would not be altered by application of Florida law, for reasons described *infra* at 1306 n. 6.

5. At oral argument, the Court asked the parties to define what is meant by the phrase "high crime area." The parties generally agreed that a high crime area is a place so situated that it creates a likelihood of attack.

potential vacation sites or to warn travelers absent knowledge of a dangerous condition.

In a case factually similar to the one at bar, *Lavine v. General Mills, Inc.*, 519 F.Supp. 332 (N.D.Ga.1981), the plaintiff brought a negligence suit against a travel agency for injuries sustained while on a vacation arranged for her by the defendant travel agency. Plaintiff was injured when she fell on slippery rocks along the beach. The court granted defendant's motion for summary judgment stating "defendant agreed to arrange a tour and supply a ticket to plaintiff; it did not insure her safety aboard the vessel." *Id.* at 337.

Plaintiffs argue that defendants assumed greater duties because defendants booked plaintiffs' lodgings at the Emerald Star Hotel thereby allegedly exposing plaintiffs to the danger of residing at a hotel in a high crime area. At least one commentator agrees that promoters of vacations to a particular destination including bulk purchases of rooms at particular hotels (defined as tour operators), should be held responsible for harms caused to travelers that occur during the vacation. However, the commentator acknowledges that courts have been "loath to hold tour operators liable for the tortious acts of suppliers which result in injuries to travelers." Dickerson, "The Liability of Travel Agents, Tour Operators and Informal Travel Promoters–Travel Agent's Professional Liability Insurance and Charter Tour Operator Surety Bonds: Liability and Coverage Issue," *Fed'n Ins.Couns.Q.* 2, 28–30 (Fall 1982) (footnote omitted).

For example, in *Wilson v. American Trans Air, Inc.*, 874 F.2d 386 (7th Cir. 1989), a husband and wife brought an action against a charter tour operator and an owner of a hotel which provided accommodations on a tour in order to recover damages for injuries that the wife suffered as a result of a criminal assault that occurred at the hotel. The plaintiffs alleged that there was substantial prior criminal activity involving guests at the hotel, but defendants disclaimed any knowledge of such activity. The court noted that there was nothing in the record that indicated that the hotel was located in a high crime area, that the hotel experienced more safety and security problems than other resort hotels on the island, or that the level of criminal activity involving guests at the hotel was unusually high. *Id.* at 390. An officer of the defendant company had visited the island. *Id.* Under such circumstances, defendant had no duty to make specific inquiries into guest safety or security at the hotel. *Id.* The court granted defendant's summary judgment motion because plaintiffs failed to show that any duty to investigate and warn existed or had been breached by defendant.[6]

As in *Lavine* and *Wilson,* the plaintiffs in the present case have failed to show special circumstances that would make a criminal attack upon the plaintiff foreseeable or likely to occur. Defendants have presented undisputed evidence that defendants sent more than 5000 people to the Emerald Star Hotel prior to the incident at issue and 15,000 people subsequently without another report of a threat to a vacationer's safety. Defendants did not own, operate, or manage the Emerald Star Hotel. Defendants arranged the accommodations; they did not in their publications or by oral promise warrant the plaintiffs' safety while at the hotel or while within the proximity of the hotel.[7]

Further, as in *Wilson,* the hotel was personally visited by one of the defendants' officials, Tellshow, who claimed that the resort did not appear to be located in a dangerous area. Plaintiffs attempt to impeach claims made in Tellshow's affidavit

---

6. Florida law imposes no duty on a travel agent or tour operator to issue warnings to travelers absent actual or constructive notice of a hazardous condition that arises from knowledge of "special circumstances," e.g. prior occurrences, *Carlisle v. Ulysses Line Ltd., S.A.,* 475 So.2d 248 (Fla.App. 3 Dist.1985).

7. Plaintiffs have brought their claims in tort only. However, the Court notes that cases brought on similar grounds for breach of an express warranty of safety have been successful. *See Stevenson v. Four Winds Travel, Inc.,* 462 F.2d 899 (5th Cir.1972) and cases cited in Dickerson, *supra,* at 31 n. 7.

with his prior deposition testimony. Tellshow's affidavit states that he stayed almost exclusively at the Emerald Star between 1985 and 1987. According to plaintiffs, Tellshow's deposition testimony at one point indicates that Tellshow may have only visited the Emerald Star on one occasion, probably in 1985. Tellshow Depo., at 25. However, it is undisputed that Tellshow in fact visited the hotel and the personal observations derived from one trip were part of the activities performed by the tour operator in *Wilson* that led the court to believe that any duty to conduct reasonable inquiry had been satisfied. *Id.* at 390.[8]

To further rebut defendants' claims that they had no knowledge that the Emerald Star was located in a high crime area, plaintiffs have submitted criminal statistics reported in "International Crime Statistics" and rankings of criminal activity published in the *New Book of World Rankings 1984.* Plaintiffs' statistics place the Bahamas as the number twelve (12th) ranked country regarding its overall crime rate. The United States was ranked eleventh (11th). Plaintiffs have also filed an affidavit by their expert witness which states that the entire Grand Bahamas is a known, high crime area. Further, plaintiffs' expert testified that a reasonable and prudent travel agent would have "explained to [plaintiffs] where they were going and some of the things they should look out for." Loupakis Depo., at 52 (docket # 29).

Defendants have objected to the authenticity of the crime statistics based on Fed. R.Civ.Pro. 56(e), and further claim that the records are hearsay not falling within a recognized exception.

The Court need not rule upon defendants' objections because even if the Court was to consider plaintiffs' crime statistics, there is no evidence to impute to defendants knowledge that the Emerald Star Hotel was located in a known, high crime area. The Court finds that plaintiffs have failed to come forth with any evidence showing that the likelihood of criminal attack in the area of the Emerald Star Hotel was higher than that of any major American city. By analogy, courts in the United States do not place a duty upon every travel agent making arrangements to destinations within the United States to warn its clients of the likelihood of a criminal attack simply because the United States is ranked as having the eleventh highest crime rate in the plaintiffs' statistics.

Likewise, there is no authority to impose such a broad duty on travel agents whose clients travel to the Grand Bahamas. The fact that plaintiffs' expert issues a warning to travelers to exert caution when traveling in the Bahamas does not cause the defendants to have knowledge of the same dangers, particularly when those dangers appear to be as great as those encountered when traveling to any large city in the United States. Just as the possibility of slipping upon a rock (*Lavine*) or being criminally assaulted in a hotel room (*Wilson*) is a risk of travel, so may the possibility of being assaulted on a street in an unknown city be considered a similar risk. When a person travels to a foreign city, state or country they take with them the chance of encountering unknown dangers.[9]

Finally, plaintiffs claim that the warning issued to the plaintiffs aboard the ship to not walk alone at night was inadequate because they should have been told not to travel on foot at night. Plaintiffs assert that the warning itself raises an inference that the hotel was located in a high crime area and further rely upon statements made to the plaintiffs by two Bahamian natives indicating that the hotel was located in a dangerous neighborhood. However, the Court finds as a matter of law that these statements are sufficiently remote that even when construing the inference of the statements in a light most

---

**8.** The Court notes that plaintiffs' characterization of Tellshow's deposition testimony appears to be taken somewhat out of context and that the affidavit and the deposition appear to be consistent. Cf. Tellshow Depo., at 22–23.

**9.** *See also Semmelroth v. American Airlines,* 448 F.Supp. 730 (E.D.Ill.1978) wherein the court held there was no duty on the airline to warn a passenger visiting Mexico of potential guerrilla activity.

**1308**

favorable to the plaintiffs they fail to offer any evidence that defendants were made aware that the hotel was located in an area giving rise to a likelihood of a criminal attack.

In this case, plaintiffs have failed to provide evidence of "special circumstances" to show that defendants knew or should have known of the foreseeability of a criminal attack necessary to create a duty to issue a warning to the plaintiffs. The decision in this case is made difficult by the serious injuries the plaintiffs have suffered. However, the Court finds that defendants did not owe plaintiffs a duty to warn of the likelihood of an attack by criminals in the area of the hotel. Plaintiffs cite no direct authority recognizing such a duty absent knowledge, and this court declines to impose one on the facts presented here. Accordingly, defendants' motion for summary judgment is granted (docket # 27). Defendants' motion to exclude the plaintiffs' supplemental evidence is denied as moot (docket # 44).

IT IS SO ORDERED.