**Kristen PASSERO, Plaintiff,**

v.

**DHC HOTELS AND RESORTS, INC.; Tamarijn Aruba Beach Resort; Trans National Travel, Inc.; Trek Tours, Ltd., Defendants.**

**No. 3:96 CV 01472(GLG).**

United States District Court, D. Connecticut.

Dec. 10, 1996.

---

Scott D. Camassar, The Reardon Law Firm, New London, CT, for Kristen Passero.

Glenn D. Woods, Rubin & Rudman, Boston, MA, for DHC Hotels & Resorts.

Craig S. Harwood, Rubin, Hay & Could, Framingham, MA, for Trans Nat. Travel, Inc.

Carla Ottaviano, DuBorg & Deganis, Glastonbury, CT, for Trek Tours, Ltd.

## MEMORANDUM DECISION

GOETTEL, District Judge.

Plaintiff was injured while on vacation in Aruba when she tripped over a flotation mat that had been placed near her chair at the hotel pool. She sued the owners/managers of the hotel, DHC Hotels and Resorts, Inc.; the hotel, Tamarijn Aruba Beach Resort ("the Tamarijn"); the travel agent who booked her vacation, Trek Tours, Ltd.; and the tour company through which the travel agent booked plaintiff's vacation, Trans National Travel, Inc. ("TNT"), seeking to recover for her injuries. Defendant TNT now moves to dismiss pursuant to Rule 12(b)(6) or for summary judgment under Rule 56, or in the alternative, to transfer the case to the District of Massachusetts pursuant to 28 U.S.C. § 1404(a). For the following reasons, we GRANT defendant's motion for summary judgment (Document # 8).

## FACTS

TNT is a Massachusetts-based tour operator that offered trips to Aruba and elsewhere in the Caribbean through a brochure entitled *Caribbean and Mexico Sunshine Guide, 1995 Boston Departures*. According to the brochure, defendant provided an "on-location representative" at its hotel destinations "to ensure a pleasant stay and to make [tour participants] aware of all activities available." Plaintiff selected the Tamarijn, an all-inclusive resort, from the approximately 18 "TNT hotels" offered in Aruba.

The contract governing the trip signed by plaintiff explicitly stated that TNT "does not own, operate or control any of the firms which will provide goods and services for the trip (for example, hotels ... )." The contract further provided that TNT does not "guarantee against the failure or negligence of such firms. Accordingly, Participant(s) agree ... not to hold (TNT) liable, in the absence of its negligence, for any loss [or] injury ... which results, directly or indirectly, from any action or omission, whether negligent or otherwise, of any entity which is to or does provide goods or services for the trip (e.g., safety of a hotel ... )."

On plaintiff's fifth day of her trip, May 18, 1995, at approximately 12:50 p.m., she tripped on a floatation mat that had been left on the pool deck near her chair. She then sued the above defendants seeking compensation for her injuries.

## DISCUSSION

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In determining whether or not the record presents genuine issue for review, the court must resolve all factual disputes in favor of the non-moving party. *See Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). The mere existence of some factual disputes between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2509–2510, 91 L.Ed.2d 202 (1986).

Plaintiff argues that summary judgment is inappropriate in this case because further discovery is necessary to determine the existence of certain factual circumstances, under which defendant may be liable for her injuries. First, plaintiff contends that defendant may be liable as a tour operator that failed to point out a dangerous condition known to it but unknown to the traveler. She claims that she should be given an opportunity to determine whether TNT did, in fact, have notice of the dangerous condition (i.e. the pool mat) that caused her injury. Plaintiff also argues that more discovery is necessary to determine the full relationship between TNT and the hotel because if TNT is found to operate or maintain the Tamarijn Hotel, it may be liable for the hotel's alleged negligence.[1]

■ With respect to plaintiff's first argument, we find that although a tour operator may be obligated, under some circumstances, to warn a traveler of a dangerous condition unknown to the traveler but known to it, such circumstances did not exist here. This doctrine of law applies to situations where a tour operator is aware of a dangerous condition not readily discoverable by the plaintiff. It simply does not apply to an obvious dangerous condition equally observable by plaintiff, such as the presence of a floatation mat by a swimming pool in broad daylight. *See Stafford v. Intrav, Inc.,* 841 F.Supp. 284, 287–288 (E.D. Mo.1993), *aff'd,* 16 F.3d 1228 (8th Cir.1994) (tour operator did not breach duty to inform by failing to disclose information that was obvious and apparent to traveler); *Manahan v. NWA, Inc.,* 821 F.Supp. 1105 (D.Vi.), *reconsideration denied,* 821 F.Supp. 1110–1114 (D.Vi.1992)(tour operator had no duty to warn of obvious dangers or to give general safety precautions about walking on streets at night), *aff'd,* 995 F.2d 218 (3d Cir.1993); *Corby v. Kloster Cruise Ltd.,* No. C–89–4548 MHP, 1990 WL 488464, at *2 (N.D.Cal. Oct. 5, 1990) (no duty to warn passenger of risk of climbing waterfall, a danger readily apparent to a reasonable person).

The cases cited by plaintiff are not to the contrary. Plaintiff relies heavily on *Creteau v. Liberty Travel, Inc.,* 195 A.D.2d 1012, 600 N.Y.S.2d 576 (N.Y.App.Div.1993), which in turn relies on language from *Wilson v. American Trans Air, Inc.,* 874 F.2d 386, 390–391 (7th Cir.1989) and *Fling v. Hollywood Travel and Tours,* 765 F.Supp. 1302, 1305 (N.D.Ohio 1990), *aff'd,* 933 F.2d 1008 (6th Cir.1991). Those cases stand for the proposition that a tour operator fulfills its obligation with respect to the safety and security of a tour participant by conducting a minimal investigation of the hotel accommodations included in its tour packages, unless there are special circumstances indicating that additional security measures are necessary. *Wilson* at 390; *Fling* at 1305–1306.

The facts presented by both of the parties indicate that no such special circumstances existed here. Before it began using the Tamarijn, TNT inspected the hotel, found that it was satisfactory, discussed it with other tour operators that had used it, and learned that it enjoyed a solid reputation. Over 37,

1. Neither party has addressed choice of law. However, since this case is governed by the law of either Massachusetts, Rhode Island, or Connecticut, and there is no difference in the relevant law of these states, we need not decide this issue.

440 TNT travellers have since stayed at the Tamarijn. Other than plaintiff's accident, TNT and its tour participants have not encountered any safety problems with the hotel's pool area. In short, there is simply no indication of prior accidents around the pool, or elsewhere at the hotel. In the absence of such facts, TNT did not have an obligation to use additional measures to secure the safety of its tour participants.

■ Moreover, the court in *Wilson* explicitly rejected the contention urged by plaintiff here—that a tour operator assumes a heightened duty to investigate and warn when it includes language in its travel brochure that is designed to put the plaintiff's mind at rest. *Id.* at 391. "[A] general promise that the trip w[ill] be 'safe and reliable' does not constitute a guarantee that no harm w[ill] befall plaintiff." *Id. See also Tucker v. Whitaker Travel, Ltd.,* 620 F.Supp. 578, 585–586 (E.D.Pa.1985) ("statements in defendant's advertisements cannot reasonably be interpreted to warrant plaintiffs' safety if they were to go horseback riding"), *aff'd,* 800 F.2d 1140 (3d Cir.), *cert. denied,* 479 U.S. 986, 107 S.Ct. 578, 93 L.Ed.2d 581 (1986); *Lavine v. General Mills, Inc.,* 519 F.Supp. 332, 336, 338 (N.D.Ga.1981) (general promise that trip would be "safe and reliable" does not constitute a guarantee that no harm would befall plaintiff). Thus, while TNT's brochure contains language to the effect that TNT vacations include "[s]ervice from pre-trip to post-trip!" and specifies the ways in which TNT service "begins before you leave [and] stays throughout your vacation," this language does not, and cannot, be read as a guarantee that TNT on-site representatives will protect plaintiff from injuring herself under all circumstances. We therefore reject plaintiff's claim that defendant was obligated to warn her of all obvious possible dangers and GRANT TNT's motion for summary judgment with respect to this ground for liability.

Plaintiff also argues that summary judgment is inappropriate because "there is a question of fact as to the full scope of the operator's involvement with the accommodations and travel arrangements made by the travel agent." Plaintiff points to language in the TNT brochure that all TNT vacations include hotel accommodations and a reference to "your chosen TNT hotel." She claims that this language creates the impression of an integrated organizational structure; in the least, she argues that she should be given an opportunity to discover the true relationship between TNT and the Tamarijn hotel.

Plaintiff relies primarily on *Jacobson v. Princess Hotels International, Inc.,* 101 A.D.2d 757, 475 N.Y.S.2d 846 (N.Y.App.Div. 1984). There, a New York state court denied a booking agent's motion to dismiss on the grounds that there was insufficient evidence to resolve the issue of whether the hotel was subject to personal jurisdiction based on its doing business in the state through the booking company, its agent. *Id.* at 757, 475 N.Y.S.2d 846. The court further noted that there were facts indicating a common corporate structure among defendants, such as continuous use of possessive phrases in the brochure describing hotel amenities, similar company names ("Princess"), and disclosure of common ownership. *Id.* at 758, 475 N.Y.S.2d 846.

■ Here, in contrast, there are no facts from which one could infer that TNT owns, operates, manages, or supervises the Tamarijn. Indeed, plaintiff has proffered no specific facts to contradict TNT's evidence that shows there is not a common corporate structure between it and the hotel.[2] Mere speculation by the plaintiff will not suffice to defeat an otherwise proper motion for summary judgment. *Knight v. United States Fire Insurance Co.,* 804 F.2d 9, 12 (2d Cir. 1986) ("[A] 'bare assertion that evidence to support a fanciful allegation lies within the exclusive control of the defendants, and can be obtained only through discovery, is not sufficient to defeat a motion for summary judgment.' "), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); *Quinn v.*

---

**2.** TNT's Assistant Vice President of Customer and Business Relations states in her affidavit that TNT does not own, operate, manage, or supervise the hotel. Moreover, the contract for the trip specifically states that TNT "does not own, operate, or control any of the firms which will provide goods and services for the trip (for example, hotels ... )."

*Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980). Thus, defendant's motion for summary judgment is also GRANTED on the grounds that, as a tour operator, TNT is not liable for the negligent acts of third-party suppliers of services to tour participants.[3] *See McAleer v. Smith,* 860 F.Supp. 924, 931 (D.R.I.1994)("Courts have generally declined to impose liability on travel agents and tour operators for injury sustained by clients ... at hotels or other destinations."); *Fling v. Hollywood Travel and Tours,* 765 F.Supp. 1302, 1306 (N.D.Ohio 1990)("Courts have been 'loath to hold tour operators liable for the tortious acts of suppliers which results in injuries to travelers.' "), *aff'd,* 933 F.2d 1008 (6th Cir.1991); *Wilson v. American Trans Air, Inc.,* 874 F.2d 386, 389 (7th Cir.1989).

Having so ruled, we do not decide whether this case should be dismissed or transferred pursuant to TNT's forum-selection clause.

### CONCLUSION

For the above-stated reasons, defendant TNT's motion for summary judgment (Document # 8) is GRANTED.

So Ordered.

---

**3.** In light of our ruling, we need not decide whether TNT's disclaimer of liability for all third-party suppliers is valid and enforceable.